## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| HENRIETTA WILSON, et al., | ) CASE NO.  1:16cv01298 |
| | ) |
| Plaintiff, | ) JUDGE JAMES S. GWIN |
| | ) |
| v. | ) MAGISTRATE WILLIAM H. |
| | ) BAUGHMAN, JR. |
| PRIMESOURCE HEALTH CARE OF | ) |
| OHIO, INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' MOTION TO COMPEL AND MOTION FOR COSTS AND ATTORNEY'S FEES

Defendants, PrimeSource Healthcare of Ohio, Inc., PrimeSource Healthcare Systems, Inc., and David Fleming (collectively, "PrimeSource"), by and through undersigned counsel, and pursuant to FRCP 37(a)(2)(B) and N.D. Ohio Local Rule 37.2, hereby file this Motion to Compel Plaintiffs to properly and fully respond to certain outstanding discovery requests. For the reasons set forth in the attached Memorandum in Support, PrimeSource respectfully requests that Plaintiffs be compelled to fully and sufficiently respond to the following:

1. Produce any and all communications between Plaintiff Henrietta Wilson ("Ms. Wilson") and any third-parties regarding this case, including but not limited to communications with potential opt-in plaintiffs that occurred before those individuals opted-in;

2. Produce any and all communications between Ms. Wilson and her counsel concerning information that Ms. Wilson subsequently relayed to or from third-parties (thereby waiving any attorney-client privilege), including but not limited to communications with potential opt-in plaintiffs that occurred before those individuals opted-in;

3. Submit to the forensic mirror-imaging of Ms. Wilson's cellular phones, at PrimeSource's cost, unless the imaging produced information concealed by Ms. Wilson, then at Ms. Wilson's cost;

4. Produce an executed medical authorization for the release of records concerning any and all health care treatment Ms. Wilson received from January 1, 2015 to present date for injuries to her neck, back, rotator cuff and arm.

PrimeSource further requests that, pursuant to FRCP 37(a)(5), this Court award PrimeSource reasonable costs and expenses against Ms. Wilson, including attorneys' fees, that PrimeSource incurred as a result of the filing of this Motion. The legal basis for this Motion and the efforts made to resolve this discovery dispute in accordance with FRCP 37(a)(1) and N.D. Ohio Local Rule 37.2 are set forth in the attached Memorandum in Support.

    Respectfully submitted,

    /s/ *Amanda M. Gatti*
    Barry Y. Freeman (#0062040)
    Amanda M. Gatti (#0088041)
    BUCKINGHAM DOOLITTLE &
    BURROUGHS LLC
    1375 E. 9th Street, Suite 1700
    Cleveland, OH 44114
    Telephone: (216) 736.4223
    Facsimile: (216) 615.3023
    bfreeman@bdblaw.com
    agatti@bdblaw.com

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| HENRIETTA WILSON, et al., ) | CASE NO.  1:16cv01298 |
| ) | |
| Plaintiff, ) | JUDGE JAMES S. GWIN |
| ) | |
| v. ) | MAGISTRATE WILLIAM H. |
| ) | BAUGHMAN, JR. |
| PRIMESOURCE HEALTH CARE OF ) | |
| OHIO, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO COMPEL AND MOTION FOR COSTS AND
## ATTORNEY'S FEES

### I.     OVERVIEW OF DISCOVERY DISPUTE AND RELEVANT FACTS

**A.     PrimeSource's Request for Written Communications.**

In connection with the captioned collective action for wage and hour violation claims, on or about August 23, 2016, PrimeSource propounded a First Set of Interrogatories and Requests for Production of Documents to Plaintiff Henrietta Wilson. (See Defs' First Set of Written Discovery, attached hereto as Exhibit A.) Request for Production of Documents No. 6 specifically sought "all communications between the Plaintiffs and any other person (excluding Plaintiffs' attorneys) which in any way relate to the claims contained in the Complaint." (Id.)

Thereafter, on or about October 13, 2016, PrimeSource received documents from Ms. Wilson in response to PrimeSource's First Set of Request for Production of Documents; however, no written communications with third-parties were received. Then, on October 25, 2016, PrimeSource received Ms. Wilson's Amended Responses to PrimeSource's First Set of

Written Discovery. (See Pl's Am. Responses to Defs' First Set of Written Discovery, attached hereto as Exhibit B). In response to Request No. 6 seeking any and all communications with third-parties, Ms. Wilson states: "Plaintiff is producing all responsive documents in her possession." (Id.) However, no such communications were produced.

Then on March 17, 2017, counsel convened for the deposition of Dr. Barbara Petkovic. While off the record, Attorney Freeman renewed PrimeSource's request for any and all communications that occurred between third-parties and Ms. Wilson's attorneys. On the record, Attorney Freeman reiterated this request. (See Dep. of Petkovic, at pp. 68-69, attached hereto as Exhibit C.) While on the record, Attorney Wido admitted that communication with third-parties was conducted using Ms. Wilson as a conduit:

```
18          MR. FREEMAN:  Given the
19   position that's been taken today, and because
20   at their depositions Dean, Dougherty, Damink
21   indicated that they were not being represented
22   by you and unless Miss Lyons is being
23   represented by you then I'm going to expect all
24   e-mails and communications between you guys and
25   those witnesses, which should have been
1    produced long ago.
2           MR. WIDO: We don't have
3    any. So Henrietta did all the, yeah, so you
4    know.
5           MR. SPITZ: We don't have
6    to get into it. There's no --
7           MR. FREEMAN: Okay. All
8    right. Okay.
9           (Off the record.)
10          MR. FREEMAN: Since counsel
11   has indicated that the communications were done
12   through the intermediary of Henrietta Wilson,
13   then Henrietta Wilson has those documents and
14   they should have been produced.
15          MR. WIDO: I don't know
16   that she has those documents.[1]
```

---

[1] This statement alone highlights how partial and careless Ms. Wilson's document production has been throughout discovery.

2

```
17          MR. FREEMAN: Then you
18    should have found out. They got to these
19    witnesses some way, not by magic.
20          MR. SPITZ: Hey, we're not
21    having these conversations on the record.
22          (Off the record.)
```

(Id. at pp. 68-69.) (emphasis added).

As such, on March 22, 2017, undersigned counsel contacted Ms. Wilson's attorneys concerning PrimeSource's outstanding request for third-party communications, and clarified (based upon the information learned at Dr. Petkovic's deposition) that the request included those related communications between Ms. Wilson and her counsel which was then forwarded to (or from) a third party. (See Corresp. from B. Freeman to C. Wido and B. Spitz, 3/22/17, attached hereto as Exhibit D.) Specifically, Attorney Freeman indicated as follows:

> [Y]ou have not responded to the discovery issue I raised last Friday: lack of production of communications between Plaintiffs and 3rd parties. I specifically identified Dean, Demink and Daugherty, but 3d parties would also include members of the class before they opted-in. When I tried to make it quick and easy by asking you to produce YOUR communications with them, Brian said "there are none" and Chris, in a slip of the tongue, disclosed the rest of the story: You used Henrietta Wilson as a conduit to communicate with 3d parties.
>
> By using Henrietta Wilson as a conduit, any communications you had with Wilson [to or from] 3d parties is NOT privileged. Please advise when we will receive YOUR communications with Wilson (or any other plaintiff) to communicate with 3d parties ***.

(Id.) Attorney Freeman again demanded production of communications between Ms. Wilson and third-parties which was the original subject of Request No. 6, but never produced, and the existence of which was never even disclosed. (Id.)

That same day, Attorney Spitz responded by refusing to produce communications with Ms. Wilson that were subsequently disclosed to (or from) third-parties – not denying that such

3

communications occurred[2] -- but instead claiming those communications were privileged. (See Corresp. from B. Spitz to B. Freeman, 3/22/17, attached hereto as Exhibit F.) The next day, Attorney Wido produced a Word Document containing some emails and written communications between Ms. Wilson and third-parties, and portrayed them to be "Henrietta's written communications with the witnesses." (See Corresp. from C. Wido to B. Freeman, 3/23/17, attached hereto as Exhibit G.) Again, no text messages were produced, nor were any communications between Ms. Wilson and her counsel.

On April 2, 2017, Attorney Freeman sent an email to opposing counsel following up on these outstanding discovery issues. (See Corresp. from B. Freeman to C. Wido, 4/2/17, attached hereto as Exhibit H.) In Plaintiffs' counsels' response, they again refused to produce any communications between themselves and third parties wherein Ms. Wilson was used as a conduit. (See Corresp. from C. Wido to B. Freeman, 4/3/17, attached hereto as Exhibit I ("We are not going to produce our communications with Henrietta. Feel free to brief it.").)

On April 18, 2017, Ms. Wilson, by and through her counsel, finally produced what *purported* to be "all known communications Henrietta had with Wanice Dean, Linda Daugherty, and Raechal DeMink." (See Corresp. from C. Wido to B. Freeman with attachments, 4/18/2017, attached hereto as Exhibit J.) This production included only five emails, and one screenshot of text messages. (Id.) Notably, the single string of text messages that was produced concerned communications between Ms. Wilson and Ms. DeMink. (Id.) Attorney Wido again claimed shortly thereafter, on April 24, 2017: "I have given you everything [Ms. Wilson] has. I am not

---

[2] Indeed, records received from Verizon Wireless reveal that on numerous occasions, phone calls between Ms. Wilson and Dean and/or DeMink occurred just minutes after Ms. Wilson spoke with her counsel. (See, e.g., Verizon Wireless Bill Summary at 02/01/2016, attached hereto as Exhibit E, witness phone numbers redacted pursuant to confidentiality agreement between the parties.) Thus, it is clear Plaintiffs' counsel used Ms. Wilson as a mechanism through which they communicated to third-parties, and any written communications which may exist in this regard are not privileged (see Section II(C), *infra*).

4

sure what else you are looking for. I am not trying to be difficult but you asked for all communications and that is what we have (*sic*) you." (See Corresp. from Wido to Freeman, 4/24/2017, attached hereto as Exhibit K.)

However, on April 25, 2017, in response to a Subpoena Duces Tecum PrimeSource served upon Ms. DeMink, PrimeSource received multiple strings of text messages reflecting <u>additional</u> communications between Ms. Wilson and Ms. DeMink. (<u>See</u> Corresp. from DeMink to Gatti, 4/25/17, attached hereto as Exhibit L.) These text messages were exchanged before April 18, 2017, when Ms. Wilson claimed (yet again) that all communications between Ms. Wilson and Ms. DeMink had been produced.

Moreover, on or about May 23, 2017, Defendants received Ms. Wilson's cell phone records from Verizon Wireless pursuant to a Subpoena Duces Tecum. (<u>See</u> Verizon Wireless Subpoena Response, Text Message Detail Report, attached hereto as Exhibit M.) With this production, Defendants received text message data in the form of an Excel spreadsheet.[3] (Id.) Due to an agreement between the parties concerning the confidentiality of the witnesses' personal identifying information, phone numbers have been redacted and replaced with the corresponding witness's name.[4] As the Verizon Wireless records show, in 2016, Ms. Wilson exchanged approximately 44 text messages with Wanice Dean, 29 text messages with Raechel DeMink, 13 text messages with Linda Daugherity, and 3 text messages with Cynthia Lyons. (Id.) And yet, Defendants have only received from Ms. Wilson a one-page screenshot reflecting a

---

[3] The Excel spreadsheet received from Verizon Wireless was not sorted by date in its original form. For ease of reference, Defendants have re-sorted the Excel spreadsheet by date for the purposes of this Motion. Also, due to the size of the original document (over 240 pages), Defendants are affixing only relevant portions as Exhibit M. Should the Court require the Exhibit in its original form (full size and unsorted by date), Defendants can provide it.

[4] Pursuant to the Proposed Stipulated Protective Order filed April 17, 2017, Defendants have requested from Plaintiffs permission to file an unredacted version of Exhibit M; however, permission was not granted. As such, Defendants have redacted the Exhibit in accordance with the Proposed Stipulated Protective Order. Should the Court require an unredacted version, Defendants request permission to submit an unredacted version of Exhibit M under seal for the Court's consideration or permission to regular-file the unredacted version.

handful of text messages that she exchanged with DeMink in 2017 – nothing more. None of Ms. Wilson's 2016 text messages were produced (confirmed by her Verizon Wireless bills.)

It is patently clear that Ms. Wilson's production, whether intentional or not, failed to include almost 90 text messages she sent and/or received from Ms. Dean, Ms. DeMink, Ms. Daugherity, and Ms. Lyons – *that we know of*. Given this incredible discrepancy, it is reasonable to believe responsive documents have been unjustifiably withheld.

### B.     PrimeSource's Request for an Executed Medical Authorization.

In connection with Plaintiffs' claim that they carried heavy equipment – which (allegedly) made their commute time compensatory – Ms. Wilson executed an Affidavit stating: "the equipment I was required to haul was so heavy that on November 15, 2015, I injured myself delivering equipment to a facility. My injuries consisted of a sprained neck, a torn rotator cuff, a sprained back, and a sprained arm." (See Aff. of Wilson, attached hereto as Exhibit N.) Because Ms. Wilson affirmatively "opened the door" by injecting her medical condition into this case, on or about March 24, 2017, PrimeSource propounded a Second Request for Production of Documents upon Ms. Wilson, seeking an executed medical authorization for the release of medical records from January 1, 2015 to present date. (See Defendants' Second Request for Production of Documents to Plaintiff Wilson, attached hereto as Exhibit O.)

On or about May 15, 2017, PrimeSource received Ms. Wilson's response to the Second Request for Production of Documents in the form of a blanket objection on the basis that a request for Ms. Wilson's medical records was overbroad and irrelevant. (See Wilson's Response to Defs' Second Request for Production of Documents, attached hereto as Exhibit P.) Ms. Wilson further contends that such medical authorization is improper because her "entire medical history" is not at issue, even though the authorization does not subject her entire medical history

6

to discovery as it is specifically limited in time.

Despite disagreeing with Ms. Wilson's objection, on or about May 18, 2017, Defense counsel wrote to Plaintiffs' counsel with regard to the medical authorization's scope. (See Corresp. From Gatti to Spitz and Wido, 5/18/2017, attached hereto as Exhibit Q.) In an effort to find an amicable resolution, the undersigned offered to modify the authorization and limit the scope to treatment that Ms. Wilson received for specific injuries outlined in her Affidavit – her neck, rotator cuff, back and arm. (Id.) Defendants' counsel further inquired as to whether communications exchanged with Ms. Wilson and her counsel that were shared with third-parties would be produced. (Id.) In response to this letter, opposing counsel asked for additional time to respond in light of a family trip – to which defense counsel agreed without hesitation. (See Corresp. between Wido and Freeman, 5/18/2017, attached hereto as Exhibit R.)

However, despite being given additional time to respond, no response was ever received. In choosing not to respond to this latest good-faith attempt to meet and confer, Plaintiffs' counsel further ignored the undersigned's renewed request for communications they had with Ms. Wilson that she then relayed to third parties. As such, Court intervention is now necessary to address and cure Plaintiffs' discovery violations.

## II. LAW AND ANALYSIS

### A. Standard for Motion to Compel.

Rule 37 of the Federal Rules of Civil Procedure authorizes a motion to compel discovery when a party fails to provide proper response to requests for production of documents under Rule 34. Fed. R. Civ. Pro. 37(a)(3)(B). The proponent of a motion to compel "bears the initial burden of proving that the information sought is relevant." *Guild Assocs. v. Bio–Energy (Wash.) LLC,* No. 2:13–cv–1041, 2014 U.S. Dist. LEXIS 82990, at *37, 2014 WL 2767605 (S.D. Ohio June

18, 2014).

Fed. R. Civ. P. 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). Relevance for discovery purposes is extremely broad. *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 402 (6th Cir. 1998). "The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Mellon v. Cooper–Jarrett, Inc.,* 424 F.2d 499, 500–01 (6th Cir. 1970).

Finally, a party moving to compel discovery must certify that it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed.R.Civ.P. 37(a)(1); See also, N.D. Ohio Local Rule 37.2. As set forth above and as evidenced by the Exhibits attached to this Motion, this requirement has been met.

### B. Plaintiff Wilson Should Be Compelled to Produce Any and All Third-Party Communications.

In response to Request for Production No. 6, which specifically asks for any and all communications Plaintiff Wilson had with any third party concerning the allegations in the Complaint, Plaintiff Wilson should be compelled to <u>fully</u> respond to this Request by producing each and every text message, email, letter, and any other writing evidencing a communication sent or received from a third party. It cannot be said that such a request seeks irrelevant information, as the request is narrowly tailored to seek communications related to the allegations of the Complaint. Nor did Ms. Wilson specifically raise this request in her response, thereby making the relevant nature of the documents sought undisputed.

Furthermore, it is undeniable that Ms. Wilson has been withholding production, as

8

evidenced by the numerous discrepancies between what Ms. Wilson produced compared to what Ms. DeMink produced, and what the Verizon Wireless records reveal. Accordingly, Ms. Wilson should be compelled to produce any and all communications between herself and any third-parties, including but not limited to potential opt-in plaintiffs that occurred before they opted-in.

### C. Plaintiff Wilson and Her Counsel Should Be Compelled to Produce Any and All Communications Relayed To Or From Third Parties.

Plaintiff Wilson and her counsel should also be compelled to produce any and all communications relayed to or from third parties, the substance of which is not protected by the attorney-client privilege, including, without limitation, potential opt-in Plaintiffs that occurred during the conditional opt-in period. The only objection raised by Plaintiffs to this Request is based upon attorney-client privilege; however, the privilege no longer applies.

The attorney-client privilege applies "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Reed v. Baxter,* 134 F.3d 351, 355–56 (6th Cir. 1998). The attorney-client privilege is "narrowly construed because it reduces the amount of information discoverable during the course of a lawsuit." *Ross v. City of Memphis,* 423 F.3d 596, 601 (6th Cir. 2005), *quoting United States v. Collis,* 128 F.3d 313, 320 (6th Cir.1997) and *In re Grand Jury Proceedings October 12, 1995,* 78 F.3d 251, 254 (6th Cir.1996). In other words, "the privilege 'applies only where necessary *to achieve its purpose* and protects only those communications necessary to obtain legal advice.'" *Ross, supra, quoting In re Antitrust Grand Jury,* 805 F.2d 155, 162 (6th Cir.1986).

Because a client's voluntary disclosure of confidential communications is inconsistent with an assertion of the privilege, voluntary disclosure of privileged communications to a third

9

party waives a claim of privilege with regard to communications on the same subject matter. *Hollingsworth v. Time Warner Cable,* 157 Ohio App.3d 539, 812 N.E.2d 976, ¶ 65 (1st Dist. 2004), citing *Mid–Am. Natl. Bank & Trust Co. v. Cincinnati Ins. Co.,* 74 Ohio App.3d 481, 599 N.E.2d 699 (6th Dist.1991), and *United States v. Skeddle,* 989 F.Supp. 905, 908 (N.D.Ohio 1997). *See also, In re Teleglobe Communications Corp. v. BCE Inc.,* 493 F.3d 345, 361 (3d Cir. 2007) ("Disclosing a communication to a third party unquestionably waives the privilege.")

Furthermore, the privilege does not cover disclosures which would have been made *even absent the privilege* (*Zamorano v. Wayne State Univ.,* E.D. Mich. No. 07-12943, 2008 WL 3929573 (Aug. 22, 2008) at *4, *citing Fisher v. U.S.,* 425 U.S. 391, 403 (1976)) nor does it protect *underlying facts from those who communicated with the attorney*:

> "[T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."

*Upjohn Co. v. U.S.*, 449 U.S. 383, 395-96, 101 S.Ct. 677 (1981), quoting *Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831. Therefore, communications with an attorney that merely involve facts received from a third-party are also not privileged. See also, *Clevenger v. Dillard's Department Stores, Inc.*, S.D. Ohio No. 1:02-cv-558, 2007 WL 127978 (Jan. 11, 2007) at fn. 2 ("the notes taken by [Attorney] Hurst during his meeting with Towers Perrin representatives reflect facts and disclosures made by others….The fact that Hurst may have later communicated with Dillards about the notes and given a legal opinion thereon does not convert the notes themselves into attorney-client communication.")

Here, Plaintiff cannot hide behind a cloak of privilege that does not exist in refusing to

10

produce these relevant communications. As such, to the extent any written communications between Ms. Wilson and her attorneys, the substance of which was either received from or subsequently relayed to/disclosed to third parties, should be produced.

### D. Plaintiff Wilson Should Be Compelled to Submit Her Cellphone to a Forensic Mirror-Imaging.

As a result of the information received from Ms. DeMink directly, and as a result of information received from Verizon Wireless subpoenaed records, it is clear Ms. Wilson is willfully withholding electronically stored information ("ESI"). Despite asking for every text message and written communication Ms. Wilson had on her cellphone sent to or received from third-parties, Ms. Wilson has produced only a handful of documents. Yet, it is clear from the additional communications produced by Ms. Demink and the nearly 90 text messages confirmed by Wilson's Verizon Wireless bills that Ms. Wilson's production is incomplete and more responsive documents exist. Accordingly, Defendants hereby request that Ms. Wilson be ordered to submit her cellphone to be mirror-imaging so that the raw data may be extracted and analyzed by Defendants' forensic ESI experts.

When a party has notice of potential litigation, it has a duty to preserve evidence that may be relevant to future litigation. *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 587 (6th Cir. 2009); *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) ("As a general matter, it is beyond question that a party to civil litigation has a duty to preserve relevant information, including ESI, when that party has notice that the evidence is relevant to litigation or ... should have known that the evidence may be relevant to future litigation.") (internal quotations omitted).

"A forensic image, or 'mirror image,' of a 'hard drive replicates bit for bit, sector for sector, all allocated and unallocated space, including slack space, on a computer hard drive.'"

11

*Bennett v. Martin*, 186 Ohio App.3d 412, 425 (10th Dist. 2009). "A mirror image copy represents a snapshot of the computer's records. *** It contains all the information in the computer, including embedded, residual, and <u>deleted data</u>." *Ferron v. Search Cactus, LLC*, S.D. Ohio. No. 2:06-CV-327, 2008 WL 1902499, at *10, fn. 5 (Apr. 28, 2008).

Here, a forensic mirror-imaging of Ms. Wilson's cellphone is necessary given her unwillingness to produce any and all relevant information it contains. On multiple occasions, defense counsel has been told by opposing counsel that "I have given you everything [Ms. Wilson] has. I am not sure what else you are looking for. I am not trying to be difficult but you asked for all communications and that is what we have (*sic*) you." (Exhibit K; see also, Exhibit J, purportedly producing "all known communications".) However, third-party production (from Ms. DeMink and Verizon Wireless) clearly demonstrate this is a fallacy. (See Exhibits L and M.) Under such circumstances, court-ordered forensic imaging is necessary and appropriate. *See, e.g., Ameriwood Indus. Inc. v. Liberman,* E.D. Mo. No. 4:06CV524-DJS, 2006 WL 3825291, *1 (Dec.27, 2006) (granting motion to compel imaging of defendant's hard drive because the court had "cause to question whether defendants have produced all responsive documents"); *Balboa Threadworks, Inc. v. Stucky,* D. Kan. No. 05-1157-JTM-DWB, 2006 WL 763668, at *4 (Mar.24, 2006) (permitting imaging of defendants' computer where defendants' representation that no responsive materials existed on computer was contradicted by their production of e-mail created on that computer).

### E. Plaintiff Wilson Should Be Compelled to Produce an Executed Medical Authorization.

Finally, Ms. Wilson should be compelled to produce an executed medical authorization for the release of records from January 1, 2015 to present date for injuries to her neck, back, rotator cuff and arm – medical information Ms. Wilson put at issue by her sworn affidavit in this

12

lawsuit.

The Northern District of Ohio has recognized that a plaintiff waives any privilege by putting her medical or mental condition at issue. *McMullen v. Reserves Network, Inc.*, N.D. Ohio. No. 1:12 CV 2140, 2013 WL 395501 (Jan. 31, 2013), *citing Maday v. Public Libraries of Saginaw,* 480 F.3d 815, 821 (6th Cir.2007); *White v. Honda of Am. Mfg.,* 2008 U.S. Dist. LEXIS 112102 (S.D.Ohio 2008). In *McMullen*, the court concluded in a discrimination and wrongful termination lawsuit, that because the plaintiff put her physical and mental health at issue, she must sign medical releases for her medical providers. "[I]t has long been the practice of federal courts to direct plaintiffs to provide authorizations so that defense counsel may obtain pertinent records directly from health care providers." *Id. citing Mintz v. Morningside Recovery, LLC,* Case No. 1:12 CV 1066, Docket # 13 (N.D. Ohio Oct 23, 2012); *White v. Honda of Am. Mfg,* 2008 U.S. Dist. LEXIS 112102 (S.D.Ohio Dec. 31, 2008).

Here, Ms. Wilson placed her medical history at issue by affirmatively attesting that the equipment that she was required to carry was so heavy it caused injury to her neck, back, rotator cuff and arm. Defendants narrowly tailored the medical authorization to seek only those medical records relevant to these injuries. Accordingly, Ms. Wilson's objection as to the scope and relevancy of the Request is without merit, and Defendants are entitled to an executed medical authorization so that a complete set of medical records may be obtained directly from Ms. Wilson's providers.

## III. CONCLUSION

For the foregoing reasons, PrimeSource respectfully requests that Plaintiffs be compelled to fully and sufficiently respond to the following:

1. Produce any and all communications between Plaintiff Henrietta Wilson ("Ms. Wilson") and any third-parties regarding this case,

13

      including but not limited to communications with potential opt-in plaintiffs that occurred before those individuals opted-in;

2. Produce any and all communications between Ms. Wilson and her counsel concerning information that Ms. Wilson subsequently relayed to or from third-parties (thereby waiving any attorney-client privilege), including but not limited to communications with potential opt-in plaintiffs that occurred before those individuals opted-in;

3. Submit to the forensic mirror-imaging of Ms. Wilson's cellular phones, at PrimeSource's cost, unless the imaging produced information concealed by Ms. Wilson, then at Ms. Wilson's cost;

4. Produce an executed medical authorization for the release of records concerning any and all health care treatment Ms. Wilson received from January 1, 2015 to present date for injuries to her neck, back, rotator cuff and arm.

PrimeSource further requests that, pursuant to FRCP 37(a)(5), this Court award PrimeSource reasonable costs and expenses against Ms. Wilson[5], including attorneys' fees, that PrimeSource incurred as a result of the filing of this Motion– a separate accounting of which will be supplemented if this Motion is granted. PrimeSource is not seeking sanctions imposed against counsel at this time.

    Respectfully submitted,

/s/ *Amanda M. Gatti*
Barry Y. Freeman (#0062040)
Amanda M. Gatti (#0088041)
BUCKINGHAM DOOLITTLE &
BURROUGHS LLC
1375 E. 9th Street, Suite 1700
Cleveland, OH  44114
Telephone:  (216) 736.4223
Facsimile:  (216) 615.3023
bfreeman@bdblaw.com
agatti@bdblaw.com

---

[5] PrimeSource is <u>not</u> seeking sanctions against opposing counsel; rather, PrimeSource only seeks sanctions against Ms. Wilson at this time.

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2017 a true and correct copy of the foregoing *Motion to Compel* was served on all parties, via the Court's electronic filing system.

/s/ *Amanda M. Gatti*
Barry Y. Freeman (#0062040)
Amanda M. Gatti (#0088041)

CL2:464818_v1