UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------

HENRIETTA WILSON et al.,

               Plaintiffs,

      v.

PRIMESOURCE HEALTH CARE OF
OHIO, INC., et al.,

          Defendants.

------------------------------------------------------

CASE NO. 1:16-CV-1298

OPINION & ORDER
[Resolving Docs. 100, 104, 141, 146, 155, 160]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiffs work as support staff in nursing homes across Ohio.[1] With this lawsuit, the Plaintiffs say Defendants[2] failed to pay them overtime and the minimum wage. Plaintiffs bring a collective action under the Fair Labor Standards Act ("FLSA") and individual claims under the Ohio Minimum Fair Wage Standards Act ("Ohio Wage Act").[3]

The parties filed dueling summary judgment motions.[4] Subsequently, Plaintiffs asked the Court (1) to strike several of Defendants' exhibits,[5] and (2) to accept new evidence.[6]

For the following reasons, this Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for summary judgment and **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion for summary judgment. The Court also **DENIES** Plaintiffs' motion to strike,

---

[1] Plaintiffs are Henrietta Wilson, Lastashia Clifton, Kendra Bhagmath, Megan Lafaire, Aries Fisk, Juanita Nicholson, Latasha Morton, and Teyonna Melton.  Doc. 90 at 3.
[2] Defendants are PrimeSource Health Care of Ohio, Inc, PrimeSource Health Care Systems, Inc., PrimeSource Health Group, LLC, PrimeHealth Group, LLC, PrimeHealth of Ohio, LLC, and David Fleming.
[3] Doc. 90 at 3.
[4] Plaintiffs moved for summary judgment.  Doc. 102.  Defendants opposed.  Doc. 112.  Plaintiffs replied.  Doc. 134. Defendants moved for summary judgment.  Doc. 100.  Plaintiffs opposed.  Doc. 114.  Defendants replied.  Doc. 133.
[5] Doc. 141. Defendants opposed.  Doc. 159.
[6] Plaintiffs moved to submit new evidence twice.  First was Doc. 155.  Defendants opposed.  Doc. 163.  Plaintiffs replied. Doc. 165.  Second was Doc. 160.  Defendants opposed.  Doc. 164.  Plaintiffs replied.  Doc. 166.

Case No. 1:16-CV-1298
Gwin, J.

**GRANTS** Plaintiffs' motions to submit new evidence, and **ORDERS** an evidentiary hearing on

July 21, 2017 at noon.

## I.      Background

The Plaintiffs file this case because Defendants (collectively, "PrimeSource")[7]

misclassified Plaintiffs as FLSA exempt employees.[8] When Plaintiffs discovered that

PrimeSource could not claim exemptions for overtime and minimum wage pay, Plaintiffs sued

PrimeSource for violating the FLSA and Ohio Wage Act.

Defendant PrimeSource provides on-site medical care to nursing home residents in

several Midwestern states.  Plaintiffs are salaried employees falling into two categories—clinical

assistants[9] and patient assistants.[10] Both groups assisted physicians at these nursing homes.

Plaintiffs often worked at different care facilities throughout the workweek.[11]

Plaintiffs allege that the Defendants failed to pay required overtime pay and the minimum

wage. Plaintiffs seek compensation for unpaid work they allegedly performed in the morning

before they arrived to the nursing homes and after they left at night.[12]

First, Plaintiffs say PrimeSource should pay them for carpooling time.  On work nights,

all Plaintiffs going to the same care facility agreed where to meet the next morning.[13] In the

morning, Plaintiffs met at this agreed-upon location and then traveled in a PrimeSource-owned

---

[7] Defendants are composed of several related companies and these companies' CEO's. These companies use
derivations of the name PrimeSource.  When the Court says "PrimeSource," the Court refers to all Defendants.
[8] Doc. 90¶ 119; Doc. 100 at 5.
[9] Plaintiffs Wilson, Lafaire, Fisk, Nicholson, Morton, and Melton.
[10] Plaintiffs Clifton and Bhagmath.
[11] Doc. 90 ¶ 41.
[12] *Id.* ¶¶ 37-47
[13] Doc. 102-40.

Case No. 1:16-CV-1298
Gwin, J.

vehicle to that day's worksite.[14] On these drives, the Plaintiffs also transported medical

equipment to and from the daily worksites and allegedly participated in conference calls.[15]

Second, Plaintiff Clinical Assistants say they performed additional work once they

arrived home at night ("at-home work").[16] The Clinical Assistants report they unloaded, cleaned,

and sterilized medical equipment.[17] They also scanned and faxed documents related to that day's

work.[18]

Defendant PrimeSource disputes Plaintiffs' account.  PrimeSource says Plaintiffs did not

work more than forty hours from Monday through Friday. PrimeSource also says it paid

Plaintiffs time-and-a-half for weekend work.[19]  PrimeSource argues Plaintiffs' commute time is

non-compensable and that the alleged at-home work was either *de minimis* or avoidable had

Plaintiffs not "goofed off" during the day.[20]   Last, PrimeSource says that even if it owes

Plaintiffs overtime, these payments should be made at a half-time rate because Plaintiffs' salaries

covered all the time the Plaintiffs worked.[21]

The parties filed extensive summary judgment requests. The Court grants in part and

denies in part the Plaintiffs' and the Defendants' motions.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law.'"[22]  The moving party must first demonstrate that there is an absence of a genuine dispute as

---

[14] Doc. 102 at 10-11.
[15] *Id.* at 11.
[16] *Id.* at 12.
[17] Doc. 102 at 12.
[18] *Id.*
[19] Doc. 112 at 1.
[20] *Id.* at 9-11.
[21] Doc. 100 at 10-13.
[22] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting  Fed. R. Civ. P. 56(a)).

Case No. 1:16-CV-1298
Gwin, J.

to a material fact entitling it to judgment.[23]  Once the moving party has done so, the non-moving

party must set forth specific facts in the record—not its allegations or denials in pleadings—

showing a triable issue.[24]  The existence of some doubt as to the material facts is insufficient to

defeat a motion for summary judgment.[25]  But the Court views the facts and all reasonable

inferences from those facts in favor of the non-moving party.[26]

When parties present competing versions of the facts on summary judgment, a district

court adopts the non-movant's version of the facts unless the record before the court directly

contradicts that version.[27] Otherwise, a district court does not weigh competing evidence or make

credibility determinations.[28]

### III.    Discussion

The parties move for summary judgment on several often-overlapping issues. The

Plaintiffs also filed several motions after the summary judgment deadline.  With these late-filed

motions, Plaintiffs say Defendant's officers gave false testimony and says Defendants secreted

relevant evidence.  The Court addresses each issue.

First, the Court finds that judicial estoppel arising from Plaintiff Aries Fisk's failure to

list this claim on a bankruptcy petition does not bar Fisk's claim, but that Plaintiff Latasha

Clifton lacks standing to sue.  Second, the Court determines that a segment of the Plaintiffs'

commute is compensable. Third, we find a genuine dispute as to whether PrimeSource must pay

the Clinical Assistants for at-home work. Fourth, we conclude PrimeSource violated the FLSA,

but we withhold judgment as to whether this violation was willful or whether liquidated damages

---

[23] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[24] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[25] *Id.* at 586.
[26] *Killion*, 761 F.3d at 580 (internal citations omitted).
[27] *See Scott v. Harris*, 550 U.S. 372, 380 (2007).
[28] *Koren v. Ohio Bell Tel. Co.*, 894 F. Supp. 2d 1032, 1037 (N.D. Ohio 2012) (citing *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 470 (6th Cir. 2012)).

Case No. 1:16-CV-1298
Gwin, J.

are appropriate.  Fifth, the Court finds PrimeSource Group and David Fleming are joint employers.  Sixth, we hold that Defendants must pay Plaintiffs a 150% premium on Plaintiffs' overtime back pay. Seventh, we hold PrimeSource may credit some previously paid weekend overtime against overtime it now owes. Next, the Court denies Defendants' request to cap Plaintiffs' damages.  Then, the Court grants summary judgment on the parties' uncontested issues.  Finally, the Court denies Plaintiffs' motion to strike, grants Plaintiffs' motions to submit new evidence, and sets an evidentiary hearing for July 21, 2017 at noon.

### A.  Judicial estoppel does not bar Plaintiff Fisk's claims

As a preliminary issue, the PrimeSource challenges whether Plaintiffs Aries Fisk and Latasha Clifton can proceed with their claims.

Plaintiffs Fisk and Clifton petitioned for bankruptcy protection.  When Plaintiffs Fisk and Clifton filed for bankruptcy, neither listed their respective claims against PrimeSource as assets they owned that could be subject to distribution to Fisk and Clifton's creditors.[29]  Defendants say judicial estoppel bars Fisk and Clifton's claims because of this disclosure failure.[30]

However, before we consider judicial estoppel, the Court must answer the threshold question of whether Fisk and Clifton have standing to bring the instant lawsuit after filing for bankruptcy.

*Standing to sue*

When Fisk and Clifton filed for bankruptcy protection, their respective bankruptcy estates became the owners of all their property, including the FLSA claims that accrued *before* they filed their bankruptcy petitions.[31]  This means that, absent the bankruptcy trustees abandoning the

---

[29] Doc. 100 at 9-10.  Originally, Defendants said opt-in Plaintiff Patrice Vincent's claims were also judicially estopped.  *Id.*  at 10.  The parties have since filed a joint stipulation moving to dismiss Vincent from the lawsuit.  Doc. 146.  The Court grants this motion.
[30] *Id.*
[31] *Auday v. Wet Seal Retail, Inc.*, 698 F.3d 902, 904 (6th Cir. 2012).

Case No. 1:16-CV-1298
Gwin, J.

FLSA claims, only Fisk's and Clifton's trustees have standing to pursue their pre-bankruptcy

employment claims.[32] However, Plaintiffs retain standing for claims that accrued after they filed

for bankruptcy.[33]

Ms. Clifton worked at PrimeSource from December 15, 2014 through January 7, 2016.[34]

She filed for bankruptcy on April 22, 2016.[35]  Her entire FLSA claim accrued before she filed for

bankruptcy.  Therefore, only Clifton's trustee has standing in this lawsuit.[36]

Ms. Fisk worked from June 30, 2014 through April 2016.[37] Fisk filed for bankruptcy on

June 26, 2015.[38]  She retains standing in this lawsuit for injuries sustained after her June 26, 2015

filing.[39]

Because Fisk has standing to sue PrimeSource, the Court now turns to the parties'

judicial estoppel arguments.

*Judicial estoppel does not bar Ms. Fisk's claim*

"The doctrine of judicial estoppel bars a party from (1) asserting a position that is

contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior

court adopted the contrary position 'either as a preliminary matter or as part of a final

disposition.'"[40] The Sixth Circuit, however, has noted that "when a debtor's omission might be

inadvertent—such as where a debtor lacks the knowledge of the factual basis of the undisclosed

---

[32] *Id.*

[33] *In re Shelbyville Rd. Shoppes, LLC*, 775 F.3d 789, 794 (6th Cir. 2015) ("numerous cases illustrate that trustees may not use bankruptcy proceedings to seek turnover of property that the debtor had no right to possess at the filing of the petition.").

[34] Doc. 90 at 10.

[35] Doc. 125.

[36] On April 25, 2017, the Court approved Ms. Clifton's trustee's motion to join this lawsuit.

[37] Doc. 90 at 11.

[38] Southern District of Ohio bankruptcy case no. 15-54181.

[39] *Shelbyville Rd. Shoppes, LLC*, 775 F.3d 789, 794 (6th Cir. 2015). Fisk's trustee "could have abandoned the claim against [PrimeSource], and doing so would have returned [the pre-June 26 claims to Fisk]." *Auday v. Wet Seal Retail, Inc.*, 698 F.3d 902, 905 (6th Cir. 2012). "But abandonment requires the Trustee to give notice to the creditors and, if any object, the bankruptcy court must hold a hearing." *Id.*  Neither has happened here.

[40] *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002).

Case No. 1:16-CV-1298
Gwin, J.

claim or where the debtor has no motive for concealment—finding Plaintiffs' actions as cause for judicial estoppel would be . . . inappropriate."[41] Courts apply judicial estoppel "with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement."[42]

Plaintiff Fisk filed the instant lawsuit eleven months *after* filing for bankruptcy. Nonetheless, Defendants argue that Fisk's deposition testimony reveals she knew—and failed to disclose—the factual basis for her FLSA claims when she filed for bankruptcy.[43]

However, Fisk's testimony does not demonstrate that she knew PrimeSource owed her overtime. In her deposition, Fisk says she suspected PrimeSource might owe her more money because she worked so many hours.[44] However, PrimeSource told Fisk she was salaried and thus ineligible for overtime.[45]  Because Fisk believed she was salaried, Fisk's general frustration with earning so little for so much work is insufficient to show that Fisk knew the factual basis for her FLSA claim.

Judicial estoppel does not bar Fisk's claims. Summary judgment is denied.

## B.  A segment of Plaintiffs' commute is compensable

Plaintiff Clinical Assistants' ("CAs") and Patient Assistants' ("PAs") commute usually had two distinct segments. First, the CAs and PAs drove to designated meeting places where CAs picked up PAs in PrimeSource vehicles.[46]  Once together, Plaintiffs rode in PrimeSource vehicles to that day's worksite. In the evening, the Plaintiffs reversed the same pattern.[47]

---

[41] *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 898 (6th Cir. 2004).
[42] *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 752, 757 (6th Cir. 2008) (internal quote omitted).
[43] Doc. 133 at 14.
[44] Doc. 102-9 at 29:16-17 (Fisk deposition).
[45] *Id.* at 12:9-11.
[46] Doc. 90 at 9.  PrimeSource required the designated meeting place to be within a thirty-mile radius of the Patient Assistants' residences.  Doc. 102-40.
[47] The Court wants to avoid preposition-heavy constructions like "The Plaintiffs' commute to/from the designated meeting location and to/from the day's worksite."  Therefore, when we write "carpooling from the designated

-7-

Case No. 1:16-CV-1298
Gwin, J.

The parties filed dueling summary judgment motions as to whether both segments of Plaintiffs' commute are compensable. The Court grants in part and denies in part Plaintiffs' and Defendants' motions.

### 1. Statutory framework for determining whether a commute is compensable

The Court considers whether Plaintiffs' travel was non-compensable commute or if PrimeSource's job requirements transformed Plaintiffs' commute into compensable work. To answer this question, some background is helpful on the FLSA and the Act's two subsequent amendments—the Portal-to-Portal Act and the Employee Commuting and Flexibility Act ("ECFA").

The FLSA requires employers to pay their employees for time worked.[48] "Work" is defined as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."[49] An activity is compensable work when it is an "integral and indispensable part of the principal activities."[50]

"A common dispute under the FLSA, as is here, is determining when the workday begins and ends."[51] Congress amended the FLSA twice to address this question, first with the Portal-to-Portal Act and later with the ECFA.

---

meeting spot to worksite," our analysis also implicitly applies to the day's end commute from the worksite back to the original designated meeting spot.

[48] 29 U.S.C. §§ 206, 207.

[49] *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944); *Chao v. Tradesmen Int'l, Inc.*, 310 F.3d 904, 907 (6th Cir. 2002).

[50] *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956); *see Mitchell v. King Packing Co.*, 350 U.S. 260, 261-63 (1956); *Brock v. City of Cincinnati*, 236 F.3d 793, 803 (6th Cir.2001); *Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008); *see also* 29 C.F.R. § 790.8(c) ("Among the activities included as an integral part of a principal activity are those clearly related activities which are indispensable to its performance.").

[51] *Russano v. Premier Aerial & Fleet Inspections, LLC*, 2016 WL 4138231, at *2 (E.D. Mich. Aug. 4, 2016).

Case No. 1:16-CV-1298
Gwin, J.

Generally, the Portal-to-Portal Act makes employees' ordinary work commute not safeguarded under FLSA coverage.[52] The Act excludes activities that are "preliminary to or postliminary to said principal activity or activities" from compensation.[53] However, this exclusion applies only to those activities that are undertaken "for [the employees'] own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer."[54]

Congress later added the ECFA to the Portal-to-Portal Act.[55]  Under the ECFA, if an employee (1) uses an employer's vehicle for the employee's normal commute and (2) the vehicle use is subject to an agreement between the employee and employer, then the employer need not pay the employee for the commute.[56]

With this framework in mind, the Court now examines the two segments of Plaintiffs' commute.

### 2.  Plaintiffs' commute from their homes to the designated meeting places

Plaintiffs seek compensation for time spent driving from their homes to the designated meeting places.[57]  There is a reasonable dispute as to whether PrimeSource must pay the CAs for their drive to the designated meeting places. However, the PAs cannot recover for this time.

---

[52] 29 U.S.C. § 254(a)(1).

[53] 29 U.S.C. § 254(a)(2).

[54] *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 398-99 (5th Cir. 1976). The FLSA exemptions should be narrowly construed, and the employer has the burden of proving an exemption applies. *Herman v. Palo Group Foster Home*, 183 F.3d 468, 472 (6th Cir. 1999).

[55] 29 U.S.C. § 254(a).

[56] *Id.*

"For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee."

[57] Doc. 102 at 19-20.

Case No. 1:16-CV-1298
Gwin, J.

*Clinical Assistants*

Plaintiff CAs say they spent about 15 minutes each morning loading approximately 100 pounds of medical equipment into PrimeSource-owned vans.[58]  The CAs then drove the equipment to a designated meeting spot and picked up the PAs.

The CAs say PrimeSource should pay them for this segment of their commute because loading and transporting PrimeSource's equipment was integral and indispensable to their principal job activities.[59]  The CAs also allege that they participated in "game-planning" conference calls on these commutes.[60]

Defendants say transporting the materials and listening to conference calls is not work.[61]  PrimeSource reasons that even if it is work, it is non-compensable because the work is *de minimis*.[62]  PrimeSource also argues that this analysis is unnecessary because the ECFA bars the CAs for seeking compensation for their commute.[63]

 "[O]rdinary commute time [is] non-compensable under the FLSA."[64]  Two exceptions are relevant here.

First, "an employee is entitled to payment for any work that the employer requires the employee to perform during the commute."[65]  This exception creates a genuine dispute as to a material fact. On one hand, PrimeSource listed "transporting equipment and supplies" as one of

---

[58] *Id.* at 19; Doc. 102-2 at 76:22-79:21 (Wilson deposition).
[59] Doc. 102 at 19.  In its CA position description, PrimeSource listed "transporting equipment and supplies" as one of the CAs' "primary responsibilities." Doc. 102-42.
[60] Doc. 102 at 20.
[61] Doc. 100 at 13-14.
[62] *Id.* at 14 (citing *Aiken v. City of Memphis, Tennessee*, 190 F.3d 753, 759 (6th Cir. 1999)).
[63] Doc. 100 at 13-14.
[64] *Aiken*, 190 F.3d at 758).
[65] *Id.* (citing 29 C.F.R. § 785.41).

-10-

Case No. 1:16-CV-1298
Gwin, J.

the CAs' "primary responsibilities" in a job posting.[66] The CAs also testified they participated in "game planning" conference calls during the commute.[67]

On the other hand, a jury could reasonably conclude that that driving a vehicle with some equipment and chatting on conference calls is *de minimis* work or a non-integral activity.[68] Work is *de minimis* when it is too trivial to merit compensation.[69] This is a genuine fact dispute for the jury to decide.

Second, under the continuous-workday rule, an employee is entitled to payment for "activities engaged in . . . after the employee commences to perform the first principal activity on a particular workday and before he ceases the performance of the last principal activity on a particular workday."[70] CAs say their workday began when they loaded 100 pounds of medical equipment into PrimeSource vans, an act integral and indispensable to transporting medical equipment.[71] Defendants disagree, saying no loading occurred because Plaintiffs had to keep the equipment in their cars at night.[72] A jury could reasonably find for either the Plaintiff CAs or for the Defendants.[73] A genuine dispute exists here.

Defendants say the above analysis is unnecessary because the ECFA bars Plaintiffs' claim.[74] Specifically, Defendants argue the CAs' commute satisfies the ECFA two-part test: (1)

---

[66] Doc. 102-42; *see also IBP, Inc. v. Alvarez*, 546 U.S. 21, 33 (2005).

[67] Doc. 102 at 20 (citing affidavits and depositions from all eight Plaintiffs).

[68] *Rutti v. Lojack Corp.*, 596 F.3d 1046, 1053 (9th Cir. 2010) (explaining "the line between incidental and integral" work).

[69] *Aiken*, 190 F.3d at 759. Three factors are weighed to determine whether "otherwise compensable time is *de minimis*: 1) the practical administrative difficulty of recording the additional time; 2) the size of the claim in the aggregate; and 3) whether "the claimants performed the work on a regular basis." *Brock v. City of Cincinnati*, 236 F.3d 793, 804 (6th Cir. 2001) (citing *Lindow v. United States*, 738 F.2d 1057, 1062–63 (9th Cir. 1984) (holding that an average of seven to eight minutes of pre-shift activity is *de minimis*)).

[70] 29 C.F.R. § 790.6(a).

[71] Doc. 102 at 12; Doc. 102-42; *see Steiner v. Mitchell*, 350 U.S. 247, 256 (1956).

[72] Doc. 112 at 11.

[73] *Lacy v. Reddy Elec. Co.*, 2013 WL 3580309, at *7 (S.D. Ohio July 11, 2013) (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 33-35 (2005) ("If the loading and unloading of the company vehicles constitute 'principal activities,' these activities could define 'the outer limits of the workday.'").

[74] Doc. 100 at 13.

-11-

Case No. 1:16-CV-1298
Gwin, J.

the CAs use PrimeSource vehicles for their normal commute and (2) this use is subject to an agreement between the CAs and PrimeSource.[75]

Defendants interpret the ECFA too broadly.[76]  The ECFA does not universally stop compensation when an employee travels to work in an employer-owned vehicle.[77] If a jury decides that the CAs performed integral, indispensable, non-*de minimis* work before or during their travel to the designated meeting place, the ECFA does not apply and PrimeSource must pay the CAs.[78]

The Court denies summary judgment for both parties as to the CAs' drive from their homes to the designated meeting spot.

*Patient Assistants*

PAs seek compensation for their commute from their homes to the designated meeting place each workday.[79]

"Normal travel from home to work is not worktime."[80]  Unlike the CAs, Plaintiff PAs offer no evidence that they performed work before or during their commute to the designated meeting spot. Therefore, this segment of the PAs' commute is non-compensable.

Accordingly, the Court grants summary judgment to PrimeSource as to the Plaintiff PAs' commute from their homes to the designated meeting place.

The Court now turns to the commute's second segment.

---

[75] *Id.*
[76] *Herman v. Palo Group Foster Home*, 183 F.3d 468, 472 (6th Cir. 1999) ("[FLSA] exemptions are construed narrowly against an employer seeking to assert an exemption.").
[77] 29 U.S.C. § 254(a).
[78] *IBP, Inc. v. Alvarez*, 546 U.S. 21, 33 (2005).
[79] Doc. 102 at 19.
[80] 29 C.F.R. § 785.35.

-12-

Case No. 1:16-CV-1298
Gwin, J.

### 3. Plaintiffs' commute from the designated meeting spot to the day's worksite

Each day, Plaintiffs met in a designated location and then carpooled to that day's worksite.[81]  PrimeSource required this carpooling system[82] and the drive often took "two to three hours each way."[83]  The Court grants Plaintiffs summary judgment for their travel time from the designated meeting spot to their daily worksite.

Under the FLSA, when "an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the days work, and must be counted as hours worked."[84]  Indeed, "[o]nce an employer requires employees to report to a designated meeting place, such as the shop, travel time to jobs sites are part of a day's work and compensable under the FLSA."[85]

Here, PrimeSource issued a memo directing CAs that they "must meet the PA within a 30 mile radius of the PA's residence.  Assess where the visit is located and agree upon a location to ride share."[86]  PrimeSource required CAs and PAs to meet at designated locations. Consequently, the Plaintiffs' subsequent travel time to job sites is compensable.[87]

Defendants say the ECFA bars compensation for Plaintiffs' travel to the daily worksites.[88]  However, the ECFA only applies to "travel from an employee's home to the first

---

[81] Doc. 102 at 10 ("PrimeSource would schedule Clinical Assistants and Patient Assistants to work together at one or more facilities for the day, and direct those employees to find a mutually agreeable meeting spot, where the Clinical Assistant would pick up one or more Patient Assistants."); Doc. 102-40 (mandatory sharing memo); Doc. 102-12 at 17:1-20:3 (Falconer deposition).
[82] Doc. 102-40 (mandatory ridesharing memo); Doc. 102-12 at 17:1-20:3 (Falconer deposition) (conceding that, in the ridesharing memo, "must mean [ridesharing was] required.").
[83] Doc. 90 at ¶ 47.
[84] 29 C.F.R. § 785.38.
[85] *Chao v. Akron Insulation & Supply, Inc.*, 2005 WL 1075067, at *10 (N.D. Ohio May 5, 2005), *aff'd*, 184 F. App'x 508 (6th Cir. 2006).
[86] Doc. 102-40.
[87] *Chao*, 2005 WL 1075067, at *10.
[88] Doc. 100 at 13-14.

-13-

Case No. 1:16-CV-1298
Gwin, J.

work location at the start of the workday"[89]—not to an employee's travel from a designated

meeting place after the workday begins.

Defendants' interpretation would make 29 C.F.R § 785.38 useless.[90] Section 785.38

requires that employees must be paid for travel time after their employer requires them to report

to a designated meeting place.[91] Because Defendants require Plaintiffs to use this system,

§ 785.38 requires compensation.

Accordingly, the Court grants summary judgment to Plaintiffs as to payment for their

commute from the designated meeting area to the day's worksite.

In summary, (1) there is a genuine dispute whether CAs' travel from their homes to the

designated meeting spot is compensable; (2) the Court grants summary judgment to PrimeSource

as to the PAs' travel from home to the designated meeting spot; and (3) the Court grants

summary judgment to all Plaintiffs as to their travel from the designated meeting place to the

daily worksite.

### C.  There is a genuine dispute as to whether Defendants must pay Plaintiff CAs for at-home work

After they arrived home at night, Plaintiff CAs say they continued working.[92] Plaintiffs'

at-home work allegedly included cleaning, sterilizing, unpacking, inventorying, and charging

equipment, as well as scanning and faxing large documents.[93]

---

[89] *Lacy v. Reddy Elec. Co.*, No. 3:11-CV-52, 2013 WL 3580309, at *6 (S.D. Ohio July 11, 2013) (citing the ECFA's legislative history (H.R.Rep. No. 104–585 (1996)).

[90] This result would be inappropriate because "there is a presumption that each word Congress uses is there for a reason." *Advocate Health Care Network v. Stapleton*, __ U.S.__, 2017 WL 2407476, at *6 (U.S. June 5, 2017).

[91] 29 C.F.R. § 785.38; *Chao*, 2005 WL 1075067, at *10.

[92] Doc. 102 at 12.

[93] *Id.*

-14-

Case No. 1:16-CV-1298
Gwin, J.

PrimeSource says that any at-home work it required was *de minimis*.[94] Additionally, PrimeSource says the Plaintiff CAs were required to tell Defendants if Plaintiff CAs were performing non-*de minimis* at-home work.[95]

There is a genuine dispute as to whether Plaintiff CAs' at-home work was *de minimis*. Plaintiffs claim they worked several hours once they arrived home.[96] Defendants counter that Plaintiffs only performed small, quick tasks like syncing their tablets and faxing paperwork.[97] A jury must weigh the parties' conflicting factual testimony.

There is also a genuine dispute as to whether PrimeSource knew Plaintiffs were performing non-*de minimis* at-home work. "An employer can escape liability by pointing to the employee's failure to comply with established time reporting procedures where the employer neither knew nor should have known about the uncompensated work."[98] A jury will decide whether PrimeSource had an established time reporting system for at-home work and whether PrimeSource knew Plaintiffs were working at home.[99]

Summary judgment is denied.

### D. Defendants violated the FLSA at least once

Plaintiffs seek summary judgment that Defendants violated the FLSA and Ohio laws by failing to pay Plaintiffs overtime.[100] Plaintiffs ask the Court for judgment that, at least once, Plaintiffs worked more than forty hours in a week without overtime compensation.

---

[94] Doc. 112 at 8.
[95] *Id.* at 6, 8.
[96] Doc. 102 at 11.
[97] Doc. 112; Doc. 102-12 at 31:14-33:8 (Falconer deposition).
[98] *Garcia v. Sar Food of Ohio, Inc.*, 2015 WL 4080060, at *4 (N.D. Ohio July 6, 2015).
[99] *Compare* Doc. 112-13 at 7 (Falconer declaration) *with* Doc. 134 at 11-12.
[100] Doc. 102 at 14.

Case No. 1:16-CV-1298
Gwin, J.

To prevail in an FLSA overtime suit, a plaintiff must prove by a preponderance of the evidence that she "performed work for which [s]he was not properly compensated."[101]

Plaintiffs' timecards establish that Plaintiffs worked at least forty hours per week.[102] Plaintiffs' one-way travel from a designated meeting spot to a worksite sometimes took over two hours each day.[103]  In such a week, PrimeSource would owe Plaintiffs at least twenty hours of overtime.  Although Plaintiffs' commute times undoubtedly varied, Plaintiffs have no trouble showing they worked over forty hours at least one week.

Defendants say Plaintiffs cannot prove they worked more than forty hours per week because Plaintiffs falsified their timecards and "goof[ed] off."

First, there is no evidence supporting Defendants' accusation that Plaintiffs falsified timecards.[104]

Second, Defendants say some of Plaintiffs' hours are not compensable because Plaintiffs were "goofing off."  But it is "the employer who has the duty under § 11(c) of the [FLSA] to keep proper records of wages [and] hours."[105]  Defendants never challenged or modified the Plaintiffs' timecards. Additionally, Defendants offer no specifics as to the length or frequency of the alleged "goofing off." Defendants never disciplined any of the Plaintiffs for goofing off.  The

---

[101] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), superseded by statute on other grounds, Portal–to–Portal Act of 1947, Pub.L. No. 80–49 § 4(a), 61 Stat. 86–87 (codified at 29 U.S.C. 254(a)).

[102] *See, e.g.*, Doc. 112-15 at 12-14 (Fisk's paystubs); Doc. 133-12 at 14-15 (Nicholson's paystubs).

[103] Doc. 90 ¶ 47(a). PrimeSource CEO David Fleming said that PrimeSource implemented ridesharing because Plaintiffs "put a lot of miles on the road, so we want—and so a lot of CAs don't have cars that are very competent so we want to make sure they got to the nursing home." Doc. 112-7 at 105:24-106:3 (Fleming deposition).  Defendants agree that Plaintiffs spent a substantial amount of time traveling from designated meeting places to worksites.

[104] Defendants cite Richie's Second Declaration (Doc. 112-1), Petrovic's Declaration (Doc. 112-2), and Falconer's Declaration (Doc. 112-13).  None of these three declarations mentions falsifying timesheets.  Even when the Court views all facts and inferences in the Defendants' favor, the declarations only state that Plaintiffs were sometimes "goofing off." Doc. 112-1 ¶ 6 (Richie second declaration).  Defendants offer no evidence suggesting that Plaintiffs falsified their timesheets.

[105] *Moran v. Al Basit LLC*, 788 F.3d 201, 205 (6th Cir. 2015) (citations omitted).

-16-

Case No. 1:16-CV-1298
Gwin, J.

weak goof-off defense does not shield Defendants from summary judgment, especially in light of the Court's finding that Plaintiffs' commute is mostly compensable.

Accordingly, the Court grants summary judgment to Plaintiffs. We find that Defendants violated the FLSA by failing to pay Plaintiffs overtime on a workweek over forty hours at least once.

### E.  The Court withholds judgment on willfulness until after the July 21 evidentiary hearing

Plaintiffs say Defendants willfully violated the FLSA.[106]  Defendants counter that they relied on advice from counsel and a Department of Labor audit to determine that Plaintiffs were exempt from the FLSA.[107]  Both parties seek summary judgment.

Generally, a two-year statute of limitations governs FLSA claims.[108] But a three-year statute of limitations applies where the statutory violation was "willful."[109]

To establish willfulness, Plaintiffs must demonstrate that PrimeSource either knew or showed reckless disregard for whether its conduct violated the FLSA.[110]  An employer's good faith effort to comply with the FLSA shields the employer from the three-year statute of limitations.[111] However, an employer acts with reckless disregard "if the employer should have inquired further into whether its conduct was in compliance with the Act, and failed to make adequate further inquiry."[112]

---

[106] Doc. 102 at 22.

[107] Doc. 100 at 4-7.

[108] *See* 29 U.S.C. § 255(a).

[109] *Id.* Defendants ask for summary judgment that a two-year statute of limitations governs Plaintiffs' claims.  Doc. 100 at 8. For the reasons discussed in this section, the Court denies Defendants' request.

[110] 29 C.F.R. § 578.3; *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133-34 (1988). The standard is higher than discerning an employer's constructive knowledge of FLSA violations for the purposes of general liability.

[111] *McLaughlin*, 486 U.S. at 133-34 ; *see also Garcia v. SAR Food of Ohio, Inc.*, 2015 WL 4743791, at *2-3 (N.D. Ohio Aug. 11, 2015).

[112] 29 C.F.R. § 578.3.

Case No. 1:16-CV-1298
Gwin, J.

Generally, relying on an attorney's opinion[113] or a Department of Labor ("DOL") audit[114] prevents a willfulness finding.  Defendants testified that they relied on both, but they never produced the DOL audit.[115]

The plot thickened when Plaintiffs made a successful FOIA request to the DOL for the audit.[116] The DOL audit does not identify the PAs, CAs, or any analogous position as exempt.[117] Defendant says it relied upon a DOL audit but that audit does not deal with the PAs or CAs and gives PrimeSource no support.

PrimeSource's attempt to support its willfulness defense based upon the advice of counsel also loses.  And PrimeSource seems to have deliberately misrepresented the attorney advice to this Court.

To support its advice of counsel defense, Defendants submitted screenshots of "labor and employment attorney/former VP of HR" Mario Utreras's alleged FLSA research.[118] PrimeSource seems to have offered this evidence to show PrimeSource relied on counsel's advice when classifying Plaintiffs as exempt.[119]

However, when deposed, Utreras testified that the screenshots may be inaccurate and that he was "never specifically asked to research the Fair Labor Standards Act."[120]

---

[113] *Brady v. Potter*, 273 F. App'x 498, 505 (6th Cir. 2008) (FMLA lawsuit).
[114] 29 C.F.R. § 578.3; *Brantley v. Inspectorate Am. Corp.*, 821 F. Supp. 2d 879, 898 (S.D. Tex. 2011).
[115] Doc. 100 at 5-6. *See, e.g.*, Defendant David Fleming's declaration that PrimeSource relied on the Department of Labor audit, but failing to include the audit itself.  Doc. 100-5 (Fleming declaration).
[116] Doc. 155-1 at 3-8.
[117] *Id.* Section III.L.3. discusses the DOL audit in detail.
[118] Doc. 133 at 8-9 n.1; Doc. 133-5.
[119] *Id.*  PrimeSource now denies that it intended the screenshots to show it relied on Utreras' research. Doc. 164 at 7-8.
[120] Doc. 164-4 at 12:12-18; 28:1-21 (Utreras deposition).

-18-

Case No. 1:16-CV-1298
Gwin, J.

Plaintiffs also offer testimony that PrimeSource received complaints that Plaintiffs worked overtime without compensation.[121] By ignoring these complaints, Plaintiffs say PrimeSource demonstrated reckless disregard for its FLSA obligations.[122]

In light of the uncovered DOL audit, Mario Utereas's testimony, and Plaintiffs evidence, the Court orders a July 21, 2017 evidentiary hearing to consider the issue of willfulness.  This decision is discussed more completely in Section III.L.

### F.  The Court will not award or deny liquidated damages at this moment

The Court denies both parties' motions regarding liquidated damages.[123]

The FLSA generally imposes liquidated damages on employers that violate the FLSA, but gives an exception where "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [the employer] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]."[124]

"An award of liquidated damages is left to the sound discretion of the court . . . as opposed to the jury."[125]

The Court withholds its decision on liquidated damages until at least after the July 21 evidentiary hearing.

### G.  PrimeSource Health Group and David Fleming are joint employers under the FLSA

Plaintiffs ask the Court for judgment that Defendants PrimeSource Health Group and CEO David Fleming jointly employed Plaintiffs along with Defendant PrimeSource and Defendant PrimeSource Ohio.[126]  If PrimeSource Group and Fleming are joint employers, then

---

[121] *See, e.g.*, Doc. 102-4 (Fleming deposition at 38:23-39:9); Doc. 102-12 (Falconer deposition at 40:11-41:3).
[122] Doc. 102 at 23.
[123] Doc. 100 at 3-4; Doc. 102 at 22-23.
[124] 29 U.S.C. § 260.
[125] *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971) (internal citation omitted).
[126] Doc. 102 at 24-26.

Case No. 1:16-CV-1298
Gwin, J.

they are jointly liable for an FLSA judgment in favor of Plaintiffs.[127] We consider PrimeSource

Health Group first and then turn to CEO Fleming.

*PrimeSource Health Group*

PrimeSource Health Group is the parent company of Defendant PrimeSource and

Defendant PrimeSource Ohio.[128]

"The test for whether a parent corporation may be considered the employer of the

employees of a subsidiary corporation is 'whether the two entities are so interrelated that they

may be considered a single employer or an 'integrated enterprise.'"[129] Courts look at four factors

in making this decision: (1) the interrelation of operations between the companies; (2) common

management; (3) centralized control of labor relations; and (4) common ownership.[130]  "None of

these factors is conclusive."[131] The "analysis ultimately focuses upon whether the parent

corporation was the final decision-maker with regard to the employment issue underlying the

litigation."[132]

Here, all four factors are satisfied. The various PrimeSource companies operated under

common ownership and common management.[133]  "Money flowed back and forth between the

companies" and "employees [from different companies] interacted on a daily basis."[134]

Generally, PrimeSource set uniform rules and regulations across its various companies.[135]

---

[127] 29 U.S.C. § 203(d).

[128] Doc. 102-4 at 27:15-28:7 (Fleming deposition).

[129] *Smith v. The Cheesecake Factory Restaurants, Inc.*, No. 3:06-00829, 2010 WL 441562, at *11 (M.D. Tenn. Feb. 4, 2010) (quoting *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993-94 (6th Cir. 1997)).

[130] *Swallows*, 128 F.3d at 994. In *Swallows*, employees brought Age Discrimination in Employment Act and Americans with Disability Act claims against their employer. Courts within the Sixth Circuit have since applied the "integrated enterprise" test to FLSA joint employer questions. *See, e.g, Takacs v. Hahn Auto. Corp.*, 1999 WL 33117265, at *4 (S.D. Ohio Jan. 4, 1999); *Cheesecake Factory*, 2010 WL 441562, at *1.

[131] *Swallows*, 128 F.3d at 994.

[132] *Takacs*, 1999 WL 33117265, at *4.

[133] Doc. 102-4 at 29:11-17 (Fleming deposition).

[134] *Id.* at 29:24-30:17.

[135] *Id.* at 34:1-3.

Case No. 1:16-CV-1298
Gwin, J.

Finally, PrimeSource Health Group's owner[136] and Vice President of Financial Planning[137]

determined Plaintiffs' compensation.[138]

The Court holds that PrimeSource Health Group jointly employs Plaintiffs.

*David Fleming*

Until the company's 2016 sale, Defendant David Fleming was PrimeSource's President,

CEO, and owner.[139]

The Sixth Circuit uses an "economic reality" test to determine "whether a person is an

'employer' responsible for FLSA obligations."[140] "Under this 'economic reality' test, 'a

corporate officer who has operational control of the corporation's covered enterprise is an

employer under FLSA, along with the corporation itself.'"[141] For instance, "one who is the chief

executive officer of a corporation, has a significant ownership interest in it, controls significant

functions of the business, and determines salaries and makes hiring decisions has operational

control and qualifies as an 'employer' for the purposes of FLSA."[142]

Defendant David Fleming is an employer under the economic reality test. As

PrimeSource's President, CEO, and owner, Fleming "had the ability to control the operation of

all of the PrimeSource companies," which included making hiring, firing, and compensation

decisions.[143]

---

[136] Doc. 134-10 (March 15, 2017 letter sent by Defendants' counsel) ("As you are well aware from other discovery responses and the PrimeSource 30(b) Fleming deposition, both entities are owned *and were owned* by PrimeSource Health Group which, in turn, is and was owned by Mr. Fleming.") (emphasis in original).
[137] Doc. 63-16.
[138] Doc. 102-4 at 36:7-13 (Fleming deposition).  Fleming also identified Bobbie Richie as part of the budgetary process. Richie says she was the Senior Vice President of Human Resources for PrimeSource. Doc. 112-1 at 1 (Richie second declaration).
[139] Doc. 100-5 at 2 (Fleming declaration) ("Until 2016, I was the owner, President, and CEO of PrimeSource").
[140] *U.S. Dep't of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 778 (6th Cir. 1995) (quoting *Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir. 1994)).
[141] *Cook v. Carestar, Inc.*, 2013 WL 5477148, at *10 (S.D. Ohio Sept. 16, 2013) (citing *Cole*, 62 F.3d at 778) (internal citations omitted).
[142] *Cole*, 62 F.3d at 778.
[143] Doc. 102-4 at 34:4-36:13 (Fleming deposition).

Case No. 1:16-CV-1298
Gwin, J.

PrimeSource Health Group and David Fleming jointly employed the Plaintiffs. The Court accordingly grants Plaintiffs summary judgment.

**H.  Defendants must pay Plaintiffs a 150% premium on Plaintiffs' overtime backpay**

The parties also request summary judgment on the appropriate method for calculating overtime back pay.[144] Plaintiffs request a 150% premium for every hour worked over forty hours per week.[145] Defendants respond that Plaintiffs should receive only a 50% premium on overtime back pay.[146]

First, the Court explains why a 50% premium does not apply to FLSA misclassification cases. Second, we conclude that a jury must determine how many hours per week Plaintiffs' salaries covered.

**1.  Plaintiffs are entitled to time-and-a-half for overtime back pay**

Employers cannot make employees work more than a specified number of hours per week "unless such employee receives compensation for his employment in excess of forty hours, unless otherwise provided for, at a rate not less than one and one-half times the regular rate at which he is employed."[147]

However, the FLSA "exempts" some employees from this benefit.[148]  In cases where "an employer improperly classifies a nonexempt employee as exempt, the employer must compensate the employee for unpaid overtime. In a misclassification case, where employees are paid at a rate other than hourly, the Court must determine the regular rate of pay for the employee."[149]

---

[144] Doc. 100 at 11-12; Doc. 102 at 24-29.
[145] Doc. 114 at 10.
[146] Doc. 100 at 10.
[147] 29 U.S.C. § 207(a)(1); *Sharpe v. Cureton*, 319 F.3d 259, 270 (6th Cir. 2003).
[148] 29 U.S.C. § 213.
[149] *Snodgrass v. Bob Evans Farms, LLC*, 2015 WL 1246640, at *5 (S.D. Ohio Mar. 18, 2015).

Case No. 1:16-CV-1298
Gwin, J.

"There is no Sixth Circuit precedent controlling the calculation of damages in FLSA misclassification cases."[150]

When employers misclassify salaried employees, employers often argue that employees should receive 50% of the employees' regular pay rate for all hours worked over forty in a given workweek instead of a 150% premium.[151] This half-the-regular-rate approach is known as the flexible workweek (FWW).  Generally, there are two theories—one statutory and one common law—employers use to advance a FWW argument.

First, under 29 C.F.R § 778.114, a 50% overtime rate applies when employers and employees share a "clear mutual understanding" that an employee's fixed salary compensates the employee for all hours worked, "whatever their number."[152]  Here, Defendants cannot satisfy § 778.114's "clear and mutual understanding" element. Parties who believe that an employee is exempt from overtime payment cannot simultaneously agree on an overtime pay structure.[153]  "In a misclassification case, there is never a clear mutual understanding."[154]

Second, some courts have concluded that the Supreme Court's *Overnight Motor Transp. Co. v. Missel*[155] decision requires courts to apply the FWW method to misclassification cases

---

[150] *Arrington v. Michigan Bell Tel. Co.*, No. 10-10975, 2012 WL 4868225, at *2 (E.D. Mich. Oct. 15, 2012).
[151] *See, e.g., Desmond v. PNGI Charles Town Gaming, L.C.C.*, 630 F.3d 351, 354-56 (4th Cir. 2011).
[152] 29 C.F.R. § 778.114(a). The FWW contains four additional elements, but the Court focuses on the "clear and mutual understanding" element. *Id.*
[153] *See Hasan v. GPM Investments, LLC*, 896 F. Supp. 2d 145, 149 (D. Conn. 2012).  In their motion for summary judgment, Defendants cite to a 2009 Department of Labor opinion letter that endorses § 778.114's FWW method in misclassification cases.  Doc. 100 at 11.  However, in their reply brief, Defendants change their position by arguing that this issue is not controlled by § 778.114. Doc. 133 at 15.  Regardless, the 2009 DOL opinion letter is not controlling because the DOL reversed its position in 2011 when it stated "[t]he Department does not believe that it would be appropriate to expand the use of [the FWW] method of computing overtime pay beyond the scope of the current regulation."  U.S. Dep't of Labor Rules & Regulations, 76 F.R. 18832–01, 18850 (April 5, 2011).
[154] *Snodgrass*, 2015 WL 1246640, at *9; *see also Blotzer v. L–3 Communications Corp.*, 2012 WL 6086931, at *11 (D.Ariz. Dec. 6, 2012) ("[A]ttempting to retroactively apply the FWW method to a miscalculation case is akin to the old square peg in a round hole problem [because it requires] apply[ing] § 778.114 to a situation it was not intended to address.") (citation omitted); *Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 102 (D.D.C. 1998) ("If defendant believed that plaintiff was exempt from § 207(a), such that she was entitled to no overtime compensation, then it was not possible for it to have had a clear mutual understanding with plaintiff that she was subject to a calculation method applicable only to non-exempt employees who are entitled to overtime compensation.").
[155] 316 U.S. 572, 581 (1942).

-23-

Case No. 1:16-CV-1298
Gwin, J.

"when the employer and the employee have agreed that the employee will be paid a fixed weekly wage to work fluctuating hours."[156] "According to this understanding of . . . *Missel*, the pertinent question is not whether overtime compensation was contemplated by the original employment agreement, but, rather, whether there was a 'clear understanding' of what hours the flat salary payment was intended to compensate."[157]

Defendants make this *Missel* argument.[158] They say PrimeSource and Plaintiffs agreed to fixed salaries that covered all hours Plaintiffs worked.[159] Defendants argue that so long as Plaintiffs understood their salaries covered all hours worked, then it does not matter that PrimeSource misclassified Plaintiffs as exempt from FLSA coverage. Defendants then argue that Plaintiffs are only entitled to a 50% premium on overtime backpay.[160]

This Court rejects this reading of *Missel*. Instead, we join several sister courts in holding that *Missel* does not provide authority to retroactively apply the half-time method in FLSA misclassification cases.[161]

---

[156] *Black v. SettlePou, P.C.*, 732 F.3d 492, 498 (5th Cir. 2013); *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 357 (4th Cir. 2011); *Urnikis–Negro*, 616 F.3d 665, 683 (7th Cir. 2010).

[157] *Costello v. Home Depot USA, Inc.*, 944 F. Supp. 2d 199, 206–07 (D. Conn. 2013).

[158] Doc. 133 at 17; 29 C.F.R. 788.325. *See also*, *Rushing v. Shelby Cty. Gov't*, 8 F. Supp. 2d 737, 745 (W.D. Tenn. 1997) (applying Defendants' argument to a misclassification case). In their briefing, Defendants say this is a non-FWW case. Doc. 133 at 16. The Court understands the Defendants to be making a *Missel* argument as described above, but distinguishing § 778.114's FWW method by applying some courts' interpretation that *Missel* permits a 50% premium under less-strict elements than § 778.114. [I'm not sure what the latter clause (starting with "but distinguishing") means.

[159] Doc. 133 at 17-19.

[160] *Id.* at 17 (citing *Sharpe v. Cureton*, 319 F.3d 259, 271 (6th Cir. 2003)).

[161] *See, e.g.*, *Snodgrass*, 2015 WL 1246640, at *13-14; *Zulewski v. Hershey Co*., 2013 WL 633402, at *6 (N.D.Cal. Feb. 20, 2013) ("the retroactive application of the FWW method in the misclassification context does not square with [*Overnight Motor*], because [*Overnight Motor*] requires an agreement between the parties that the fixed weekly salary was compensation for all straight time [and] such an agreement is not present in misclassification cases"); *Perkins v. S. New England Tel. Co.*, 2011 WL 4460248, at *1 (D. Conn. Sept. 27, 2011) (*Missel* does not control when misclassified employees "received a fixed salary (satisfying the minimum wage) for fluctuating weekly hours that could exceed 40 per week."); *Russell v. Wells Fargo & Co.*, 672 F. Supp. 2d 1008, 1016 (N.D. Cal. 2009) ("[T]he Supreme Court's decision in [*Missel v.*] *Overnight Motor* and the DOL's 1968 interpretive rules demonstrate that the FWW method cannot be used to calculate overtime pay retroactively for the purposes of determining damages under the FLSA in a misclassification case.").

-24-

Case No. 1:16-CV-1298
Gwin, J.

First, *Missel* is not a misclassification case. "Its holding that parties can agree to an employee being paid a fixed rate for all hours worked if certain conditions are met, cannot logically extend to misclassification cases" because misclassified employees have no idea they are non-exempt.[162]  In misclassification cases,

> [t]he fundamental assumption underpinning the FWW is that it is fair to use it to calculate overtime pay because the employee consented to the payment scheme. But in the context of an FLSA misclassification suit when consent is inferred from the employee's conduct, that conduct will always, by definition, have been based on the false assumption that he was not entitled to overtime compensation. The job will have been advertised as a salaried position. The employee, if he raised the issue, will have been told that the salary is all he will receive, regardless of how many hours he works. That is the very nature of a salaried, exempt position. When it turns out that the employer is wrong, and it is learned that the FLSA required the employer to pay the employee an overtime premium, the notion that the employee's conduct before he knew this is evidence that the employee somehow consented to a calculation method for the overtime pay that no one even knew was due, is perverse. If the FWW requires consent in some fashion, the employee's actions before he knew he was due overtime pay just cannot logically be the basis of that consent.[163]

Second, applying *Missel* to misclassification cases undermines the FLSA's "broad remedial intent."[164] To "assess [retrospective] damages using the fluctuating workweek method provides a perverse incentive to employers to misclassify workers as exempt, and a windfall in damages to an employer who has been found liable for misclassifying employees under the FLSA."[165]

Accordingly, the Court concludes that the FWW method does not apply here. Defendants must pay Plaintiffs a 150% premium on Plaintiffs' overtime backpay.

---

[162] *Wallace v. Countrywide Home Loans Inc.*, 2013 WL 1944458, at *7 (C.D. Cal. Apr. 29, 2013).

[163] *Ransom v. M. Patel Enters.*, Inc., 825 F. Supp. 2d 799, 809 n.11 (W.D. Tex. 2011).

[164] *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015) ("Courts interpreting the FLSA must consider Congress's remedial purpose."); *McCoy v. N. Slope Borough*, 2013 WL 4510780, at *19 (D. Alaska Aug. 26, 2013) (after considering *Missel*, concluding that "the FWW method should not be applied in a misclassification case, particularly in light of the FLSA's remedial purpose.").

[165] *Perkins*, 2011 WL 4460248, at *4 n.5.

Case No. 1:16-CV-1298
Gwin, J.

**2.  There is a genuine dispute as to the Plaintiffs' regular hourly pay rate**

So far, the Court has concluded Defendants must pay Plaintiffs time-and-a-half for overtime back pay. But time-and-a-half paid on what underlying dollar amount? To answer this question, the Court must determine Plaintiffs' regular hourly pay rate.

Under 29 C.F.R. § 778.308, the Court divides the total compensation in any given pay period "by the total hours of work for which the payment is made."[166]  A payment is made for "the number of hours which the salary is *intended to compensate*."[167]

There is a genuine dispute as to the number of hours Plaintiffs' salaries were intended to compensate. Some evidence suggests that Plaintiffs' salaries were intended to cover all hours worked. For instance, Plaintiffs Fisk and Nicholson's paystubs reflect the same salary despite working different hours.[168]

Other evidence suggests that Plaintiffs' salaries were intended to compensate a forty-hour workweek. For example, a CA job posting says the position requires the "ability to work a 40 hour work week."[169]  Similarly, a PA posting says the position requires the "ability to stand and walk up to 8 hours."[170]

Therefore, a jury will decide how many hours per week Plaintiffs' salaries were intended to compensate.

**I.  Defendants may credit some of the premiums Plaintiffs received for weekend commutes against overtime owed to Plaintiffs**

Generally, employers must pay employees time-and-a-half for work in excess of forty hours per week.  On occasion, employers will pay an employee time-and-a-half before the

---

[166] 29 C.F.R. § 778.308.
[167] 29 C.F.R. § 778.113.
[168] Doc. 133 at 17-18; Doc. 112-15 at 12-14 (Fisk's paystubs—the small discrepancy is due to a raise, not overtime payment for different hours works); Doc. 133-12 at 14-15 (Nicholson's paystubs).
[169] Doc. 102-42 at 2.
[170] Doc. 155-2 at 1.

Case No. 1:16-CV-1298
Gwin, J.

employee clears the forty-hour milestone.[171]  For instance, an employee who worked 35 hours

Monday through Friday might receive time-and-a-half for five hours she works on Saturday.[172]

In such a case, the FLSA allows this "'extra compensation' [from Saturday's work] to be

credited against any overtime liability."[173]

      In this case, when Plaintiffs worked weekends, PrimeSource paid Plaintiffs for their

commute time at a time-and-a-half premium.[174] PrimeSource says this commute time was non-

compensable under the FLSA, and now seeks judgment that it can credit these payments against

other overtime it may owe Plaintiffs.[175]

      Plaintiffs' travel time from the designated meeting spot to the worksite is compensable—

so PrimeSource cannot credit this time.[176]

      A jury will decide whether the Clinical Assistants' commute from their homes to the

designated daily meeting spot is compensable. [177]  If a jury concludes it is not compensable, then

PrimeSouce may apply credit premiums for that segment of the CAs' weekend commute against

other overtime owed.

      The Patient Assistant's commute from their homes to the designated meeting spot is not

compensable work. [178]  Therefore, PrimeSource may credit premiums paid to PAs for this

segment of their weekend commute against other overtime owed.

      Accordingly, the Court grants in part and denies in part judgment to Defendants.

---

[171] 29 U.S.C. § 207(e)(5)-(6); 29 C.F.R. § 778.203(d).
[172] *Shepard v. City of Waterloo*, 2015 WL 9165915, at *16 (N.D. Iowa Dec. 16, 2015) ("These hours, paid at a contractual premium rate, are worked prior to [plaintiff's] amassing forty working hours in a workweek. Therefore the City does not need to pay him one and one-half times his regular rate for such hours under the statute. That the City does is what makes these hours potentially creditable against FLSA liability.").
[173] *Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 589 (6th Cir. 2002).
[174] Doc. 100 at 14-15.
[175] Doc. 133 at 21.
[176] Section III.A.3.
[177] Section III.A.2.
[178] *Id.*

Case No. 1:16-CV-1298
Gwin, J.

### J.  A jury will determine Plaintiffs' damages

When Plaintiffs responded to interrogatories, six Plaintiffs estimated they worked 10-20 hours of uncompensated overtime per week.[179] Defendants ask the Court to cap Plaintiffs' damages at these estimates because Plaintiffs "certified [the estimates] as true in their interrogatory answers."[180]

We decline to cap Plaintiffs' damages at these 10-20 hour estimates.  However, Defendants may use Plaintiffs interrogatories to impeach Plaintiffs at trial if Plaintiffs stray from their interrogatories' estimates. Summary judgment is denied.

### K.  The Court grants summary judgment as to the Parties' uncontested issues

The Parties agree that (1) Plaintiffs' claims under the Ohio Wage Law are subject to a two-year statute of limitations, (2) Plaintiffs cannot recover any liquidated damages on their Ohio overtime claims, and (3) the opt-in Plaintiffs have no Ohio claims.[181] The Court grants Defendants summary judgment on these undisputed issues.

### L.  Plaintiffs' supplemental motions

After the parties filed summary judgment papers, Plaintiffs filed several motions.  The Court (1) grants the motion to admit Mario Utreras's deposition;[182] (2) denies the motion to strike four exhibits;[183] (3) grants the motion to admit the DOL audit;[184] and (4) orders an evidentiary hearing to consider sanctions.[185]

---

[179] Doc. 133 at 21-22.
[180] Doc. 100 at 15.
[181] Id. at 1; Doc. 114 at 7.
[182] Doc. 160. Defendants opposed. Doc. 164.  Plaintiffs replied. Doc. 166
[183] Doc. 141. Defendants opposed.  Doc. 159.
[184] Doc. 155. Defendants opposed. Doc. 163.  Plaintiffs replied. Doc. 165.
[185] Id.

-28-

Case No. 1:16-CV-1298
Gwin, J.

### 1.  Mario Utreras's deposition and screenshots of his alleged FLSA research

In its reply brief, PrimeSource submitted screenshots of "labor and employment attorney/former VP of HR" Mario Utreras's alleged FLSA research.[186]  PrimeSource apparently offered this evidence to show PrimeSource relied on counsel's advice when classifying Plaintiffs as exempt.[187] In response, Plaintiffs deposed Utreras.[188]

Instead of supporting PrimeSource's argument that it had a good faith belief that Plaintiffs were exempt, Utreras testified that he expressed concern regarding PrimeSource's failing to pay commuting time to PrimeSource's general counsel.[189] Plaintiffs now seek to submit Utreras's deposition as evidence that PrimeSource willfully violated the FLSA.[190]

PrimeSource asks the Court to bar the use of Utreras's deposition because Plaintiffs did not seek Rule 56(d) leave to file this motion until after the summary judgment deadline.[191]  This argument loses.  Utreras only emerged in this litigation when PrimeSource used screenshots of Utreras's alleged research in its reply brief.  Plaintiffs then swiftly moved to depose Utreras while discovery remained open.[192]

PrimeSource opened the door to Utreras; the Court will not help PrimeSource close the door now that PrimeSource does not like what came out.[193]

The Court accepts Utreras's deposition into evidence.  Additionally, as discussed below, the Court will consider Utreras's screenshots at an upcoming evidentiary hearing.[194]

---

[186] Doc. 133 at 8-9 n.1; Doc. 133-5.
[187] *Id.*  PrimeSource denies that it intended the screenshots to show it relied on Utreras's research. Doc. 164 at 7-8.
[188] Doc. 160-1 (Utreras deposition).
[189] *Id.* at 21:2-24 (Utreras deposition).
[190] Doc. 160.
[191] Doc. 164.
[192] Plaintiffs deposed Utreras on April 19, 2017. Doc. 160-1.  Discovery closed May 8, 2017.
[193] This decision is in "keeping with the overall policy in this Circuit of resolving disputes on their merits, rather than disposing of them on procedural or technical grounds." *Vergis v. Grand Victoria Casino & Resort*, 199 F.R.D. 216, 218 (S.D. Ohio 2000).
[194] Section III.L.3.

Case No. 1:16-CV-1298
Gwin, J.

Before Plaintiffs deposed Utreras, Plaintiffs moved to strike screenshots of his alleged research from PrimeSource's reply brief.[195]  Plaintiffs said PrimeSource failed to authenticate the screenshots.[196]  When deposed, Utreras testified that some of the screenshots may not accurately reflect his research.[197] The Court finds that, after Utreras's testimony, it has sufficient information to weigh the screenshots. We deny Plaintiffs' motion to strike the screenshots.

### 2.  The Court declines to strike Fleming, Richie, and Falconer's declarations

#### David Fleming's declarations

Plaintiffs want to strike President and CEO David Fleming's declaration.[198]  In his declaration, Fleming says PrimeSource relied on the advice of counsel and the DOL audit when determining Plaintiffs' compensation.[199] Plaintiffs say Fleming lacks the personal knowledge required to make these statements.[200]

This argument loses. Fleming was PrimeSource's CEO, President, and owner.[201] He testified that he was involved with employees' compensation decisions.[202]  Fleming has sufficient personal knowledge to make his declaration.

#### Bobbie Richie and Yesenia Falconer's declarations

In their respective declarations, Senior Vice President of Human Resources Bobbie Richie and Director of Clinical Services Yesenia Falconer use the term "*de minimus*" to describe Plaintiffs' work.[203] Plaintiffs want to strike these allegedly "improper" legal conclusions.[204]

---

[195] Doc. 141 at 1-4.
[196] *Id.* Defendants say they "offered [the screenshots] solely to contradict Plaintiffs' false accusations and not as substantive evidence on summary judgment." Doc. 159 at 4.
[197] Doc. 160-1 at 28:1-21 (Utreras deposition).
[198] Doc. 141 at 4-8.
[199] Doc. 112-9 (Fleming declaration).
[200] Doc. 141 at 5-6.  Plaintiffs argue that Fleming's deposition reveals that he lacks the personal knowledge—which he claimed to have in his declaration—that PrimeSource relied on the DOL audit. *Id.*
[201] Doc. 112-9 (Fleming declaration).
[202] Doc. 102-4 at 34:4-36:13 (Fleming deposition).
[203] Doc. 112-1 (Richie second declaration); Doc. 112-13 (Falconer declaration).
[204] Doc. 141-1 at 8.

Case No. 1:16-CV-1298
Gwin, J.

The Court disagrees.  In this context, "*de minimus*" just means minimal. The motion to strike is denied.

### 3.   The Court admits the DOL audit and orders an evidentiary hearing

As discussed in Section III.E, PrimeSource says it relied on a DOL audit when it misclassified Plaintiffs as exempt from the FLSA's overtime requirements.[205] Although PrimeSource never produced the audit, Plaintiffs used a FOIA request to retrieve the audit from the DOL.[206]   Plaintiffs seek to admit the audit as evidence.

The Court accepts the audit into evidence.

PrimeSource makes procedural and substantive arguments for excluding the audit.

Procedurally, PrimeSource says Plaintiffs failed to seek Rule 56(d) leave to file this motion after the summary judgment deadline.[207] This argument loses. Plaintiffs made their FOIA request on March 15, 2017, when summary judgment briefing was ongoing.[208] And Plaintiffs moved to submit the audit on April 14, 2017, when discovery remained open.[209] The Court finds no procedural misstep to support excluding critical evidence.[210]

Substantively, Defendants argue the audit is incomplete and the Court cannot rely on it.[211]  Specifically, PrimeSource says portions of the audit are redacted or missing.[212]

---

[205] Doc. 112-9 (Fleming declaration);
[206] Doc. 155;  Doc. 155-1 (DOL audit).
[207] Doc. 163 at 6-8.
[208] Doc. 155-1 at 1.
[209] Doc. 155.
[210] As before, this decision is in "keeping with the overall policy in this Circuit of resolving disputes on their merits, rather than disposing of them on procedural or technical grounds." *Vergis*, 199 F.R.D. at 218.
[211] Defendants also say the audit is hearsay. Doc. 163 at 8-11.  Even if the Plaintiffs are correct that the audit is hearsay, the public records exemption makes the audit admissible.  Federal Rule of Evidence 803(8) exempts "factual findings from a legally authorized investigation."  Here, the DOL's audit qualifies for the exemption.
[212] Doc. 163 at 11-13.

Case No. 1:16-CV-1298
Gwin, J.

As to redactions, the DOL explained why it redacted small portions of the audit.[213] None of the DOL's reasons would result in redacting information relating to the Plaintiffs' exemption status. To the extent the audit could be missing pages, Defendants' arguments do not persuade the Court to exclude the audit.[214]

Having reviewed the audit, PrimeSource could not rely upon the audit to conclude the Plaintiffs were exempt.  However, PrimeSource told the Court at least five times that it relied on the audit for this purpose.[215] PrimeSource should develop its argument further at an evidentiary hearing so the Court can assess the audit's completeness and reliability.

Consequently, the Court orders an evidentiary hearing at noon on July 21, 2017. At the hearing, the Court will consider the DOL audit's reliability, PrimeSource's representations about Utreras's FLSA research, liquidated damages, willfulness, and sanctions.

---

[213] Doc. 155-1 at 1-2 (reporting redactions were made to preserve trade secrets, social security numbers, information that would be an unreasonable invasion of privacy if disclosed, and information that reveals law enforcement techniques).
[214] Doc. 163 at 12-13.
[215] Doc. 112-9 (Fleming declaration); Doc. 102-1 at 138:15-139:11 (Richie deposition); Doc. 112 at 12 ("In truth, PrimeSource explained why CAs and PAs were classified as overtime exempt: The advice of counsel and a DOL audit.") (emphasis in original); Doc. 100 at 6 ("Either basis – reliance on a DOL audit OR advice of counsel – entitles Defendants to summary judgment that the 2-year statute of limitations applies. But in this case, Defendants have both."); Doc. 133 at 8 ("PrimeSource repeatedly explained Plaintiffs were classified exempt based on the DOL audit and advice of counsel.").

Case No. 1:16-CV-1298
Gwin, J.

### IV.    Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENES IN PART** the

parties' motions for summary judgment. The Court also **DENIES** Plaintiffs' motion to strike,

**GRANTS** Plaintiffs' motions to submit the DOL audit and Utreras's deposition as evidence, and

**ORDERS** an evidentiary hearing on July 21, 2017 at noon.

IT IS SO ORDERED.


Dated: July 5, 2017                                        _s/_        _James S. Gwin_____
                                                           JAMES S. GWIN
                                                           UNITED STATES DISTRICT JUDGE