UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------
HENRIETTA WILSON, et al.,

        Plaintiffs,

  vs.

PRIME SOURCE HEALTHCARE
OF OHIO, et al.,

        Defendants.
-------------------------------------------------------

CASE NO. 1:16-cv-1298

OPINION & ORDER
[Resolving Docs. 270, 271, 273, 274, 281]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    Both Plaintiffs[1] and Defendants[2] seek to finalize and enforce their version of a settlement agreement originally reached on August 2, 2017.

    Defendants also request leave to file their version of the settlement agreement under seal.[3]

    Plaintiffs further seek an order holding that the settlement terms are no longer confidential or, in the alternative, leave to file the settlement agreement under seal.[4]

    Finally, Plaintiffs seek sanctions against Attorney Barry Freeman and his law firm.[5]

    For the reasons stated below, the Court **GRANTS** Plaintiffs' motion to enforce the settlement. The Court **DENIES** all of the parties' other motions and requests.

---

[1] Doc. 273 (Plaintiffs' motion to enforce settlement). Defendants oppose. Doc. 277. Plaintiffs reply. Doc. 279.
[2] Doc. 270 (Defendants' motion to approve settlement). Plaintiffs oppose. Doc. 272. Defendants reply. Doc. 275.
[3] Doc. 271.
[4] Doc. 274. Defendants oppose. Doc. 276. Plaintiffs reply. Doc. 278.
[5] Doc. 281. Defendants oppose. Doc. 284. Plaintiffs reply. Doc. 285.

## I. BACKGROUND

This Fair Labor Standards Act collective action settled at the final pretrial conference on August 2, 2017.[6] The parties placed the settlement terms on the record at the end of that conference, with the understanding that they would memorialize that settlement in writing and file it with the Court shortly thereafter.[7] The parties also agreed that the settlement's terms would be confidential.[8]

Nearly three months later, the parties reached out to the Court to discuss a settlement impasse.[9] Defendants contended that they did not agree to a mutual release of claims between themselves and the Plaintiffs and that they were entitled to claw back some portion of the settlement amount if fewer class members materialized than the parties originally contemplated.[10]

The Court disagreed with both of Defendants' contentions.[11] Nothing in the settlement hearing transcript suggested that the parties had agreed to a unilateral release of claims by the Plaintiffs, as opposed to the mutual release of claims that is typical of settlements.[12] Similarly, the recorded settlement terms specified that Defendants would pay a sum certain, and there was no suggestion that this amount was contingent on the size of the number of claimants.[13]

Defendants then appealed the Court's findings from this November 2017 hearing to the Sixth Circuit.[14] However, Plaintiffs moved to dismiss that appeal for lack of jurisdiction,

---

[6] *See* Doc. 261.
[7] *Id.* at 4:4-6.
[8] *Id.* at 3:4-14.
[9] Doc. 262.
[10] *See generally* Doc. 266.
[11] *Id.* at 3:23-6:14.
[12] *Id.* at 3:23-5:3.
[13] *Id.* at 5:14-16.
[14] *See* Doc. 269.

Case No. 1:16-cv-1298
Gwin, J.

arguing that nothing about this November 2017 hearing created a final appealable order.[15] Defendants apparently agreed with this position, because they voluntarily dismissed their appeal and brought their dispute back to this Court.[16]

Meanwhile, both during and after the pendency of Defendants' appeal, the parties have filed dueling motions seeking approval, in Defendants' case,[17] or enforcement, in Plaintiffs' case, of the settlement agreement.[18]

As a result of all this litigation surrounding the settlement agreement, none of which is sealed, Plaintiffs have moved for a ruling that the settlement terms are no longer confidential.[19]

Plaintiffs also seek sanctions against Defendants' attorney, Barry Freeman, and his firm, Buckhingham, Doolittle & Burroughs LLC.[20] Plaintiffs argue that Freeman and his firm have attempted to extract the claw back and unilateral release of claims provisions in bad faith.[21]

## II. LEGAL STANDARD

A federal court maintains jurisdiction to enforce a settlement agreement when the parties' obligation to comply with the settlement is "part of the order of dismissal-either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order."[22]

Before enforcing a settlement, a district court must conclude that agreement has been reached on all material terms.[23] Ordinarily, an evidentiary hearing is required where facts

---

[15] Doc. 273-1 at 3-4.
[16] *See* Doc. 282.
[17] *See* Doc. 270.
[18] *See* Doc. 273.
[19] Doc. 274.
[20] *See* Doc. 281.
[21] *Id.* at 2.
[22] *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381 (1994) (internal citations omitted).
[23] *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988).

-3-

material to an agreement are disputed.[24] However, no evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present.[25] Thus, summary enforcement of a settlement agreement has been deemed appropriate where no substantial dispute exists regarding the entry into and terms of an agreement.[26]

The existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement. When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement.[27]

Courts generally give effect to the parties' expressed intentions in a contract, whereas intentions not directly expressed in the contract are deemed to have no existence.[28]

### III. ANALYSIS

**A. Plaintiffs' Motion to Enforce Settlement and Defendants' Motion to Approve Settlement**

1. *Settlement Terms*

The parties currently argue over two terms that they have both described as "non-material":[29] (1) whether the parties agreed to a mutual release of claims or whether Plaintiffs will unilaterally release their claims against Defendants, and (2) whether the settlement also includes a provision that allows Defendants to claw back a portion of their payment to Plaintiffs if fewer

---

[24] *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 622 (6th Cir. 1973).
[25] *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976).
[26] *Kukla*, 483 F.2d at 621; *cf. Therma–Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000) (recognizing that summary proceedings may result in inequities when a dispute exists as to a material term).
[27] *Brock*, 841 F.2d at 154; *Kukla*, 483 F.2d at 621 (observing that the power of a trial court to enforce a settlement agreement has been upheld even where the agreement has not been arrived at in the presence of the court nor reduced to writing); *see also Spercel v. Sterling Indus., Inc.,* 285 N.E.2d 324, 326-27 (Ohio 1972) ("[A] settlement agreement entered into between the parties in the presence of the court constitutes a binding contract, even though it is not reduced to writing . . . .").
[28] *Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co.,* 544 N.E.2d 920, 923 (Ohio 1989).
[29] *See* Doc. 270; Doc. 273-1 at 6.

Case No. 1:16-cv-1298
Gwin, J.

class members file claims. Plaintiffs argue that Defendants are attempting to add these terms to the settlement contract even though they would contravene the express terms of the settlement placed on the record during the August 2, 2017 conference. The Court agrees.

The Court finds that neither of these terms was included by the parties as part of the settlement contract agreed to on the record during the August 2, 2017 final pre-trial conference. The parties agreed to a mutual release of claims that accrued on or before the date of the August 2, 2017 final pre-trial conference. The parties also agreed that Defendants would pay Plaintiffs a sum certain with no potential for a Defendant claw back.

Regarding the mutual release of claims, the record of those proceedings does not support Defendants' position that there was only a unilateral claim release.

"[O]ne of the primary purposes of a settlement agreement is to put an end to litigation."[30] As the Court explained during the November 2017 hearing, a settlement typically involves both parties releasing the legal claims that they had against each other relating to the suit as of the date of the settlement.[31] Plaintiffs had numerous claims against Defendants that accrued both before and during this litigation, and Defendants may have had counterclaims relating to this litigation against the Plaintiffs. If either party wished to preserve any of those possible claims, they could have bargained for a term to that effect, but neither party took that step.

Additionally, Defendants' argument that Defense Counsel was "cut off" during the final pre-trial conference is not well taken.[32] If Defendants believed that there was some ambiguity in the settlement terms, they could have clarified those terms on the record during the August 2017

---

[30] *Galiano v. Harrah's Operating Co.*, 67 F. App'x 252, at *2 (5th Cir. 2003).
[31] Doc. 266 at 3:25-4:5; *see also Smoot v. Fox*, 340 F.2d 301, 302 (6th Cir. 1964) ("Dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties."); *Montgomery v. Honda of Amer. Mfg., Inc.*, 47 F. App'x 342, 348 (6th Cir. 2002).
[32] *See* Doc. 277 at 4.

-5-

proceedings. In fact, that is exactly what Defense Counsel did when Defendants were unsure of other terms that the Court and parties described as part of the settlement.[33]

Similarly, the record is abundantly clear that Defendants did not include a claw back provision as part of the settlement. Defendants agreed to pay Plaintiffs a sum certain.[34] Nothing in the record of the settlement proceedings suggests that this sum was either per Plaintiff or otherwise dependent on the size of the final Plaintiff class.

For those reasons, the Court finds that the parties formed a valid and enforceable settlement contract on the record at the August 2017 final pre-trial conference. This agreement did not include a one-sided release of claims and claw back terms that Defendants have attempted to add. Defendants' unwillingness to finalize the settlement agreement absent the addition of these two terms and subsequent failure to make payments to Plaintiffs constitutes a breach of that agreement.[35]

2. *Attorney's Fees and Interest*

Plaintiffs also seek attorney's fees and prejudgment interest stemming from Defendants' failure to finalize the settlement agreement.

The Sixth Circuit, while interpreting Ohio law,[36] has held that "Ohio law allows a court to award attorney's fees as compensatory damages when a party's breach of a settlement

---

[33] *See* Doc. 261 at 4:14-5:14.
[34] Doc. 261 at 2:7-11.
[35] *See Suter v. Farmers' Fertilizer Co.*, 126 N.E. 304, 306 (Ohio 1919) ("[W]here the obligations of a contract have attached, and one party, without the consent of the other, does some act or makes some new arrangement which prevents the carrying out of the contract according to its terms, he cannot avail himself of this conduct to avoid his liability to the other party to the contract.").
[36] A settlement like this one is ultimately a contract. A dispute over that contract is therefore controlled by state contract law. Here, the settlement contract was formed in Ohio and dealt with events that occurred in Ohio. *See generally* Doc. 1. There is also no choice-of-law provision in the settlement contract. As such, Ohio contract law applies. *See, e.g., Tocci v. Antioch Univ.*, 967 F. Supp. 2d 1176, 1191-94 (S.D. Ohio 2013) (conducting a choice-of-law analysis before ultimately applying Ohio law to a settlement contract with significantly less contacts to Ohio than exist here).

-6-

Case No. 1:16-cv-1298
Gwin, J.

agreement makes litigation necessary, even where none of the exceptions to the American Rule have been shown" and "[n]either party had acted in bad faith."[37] Attorney's fees as compensatory damages are available whether a party files a separate breach of contract suit or a motion to enforce settlement before the original trial court.[38]

*Rohrer Corp*. is directly on point. Defendants have breached the settlement contract by refusing to execute the settlement agreement according to the terms placed on the record during the August 2, 2017 hearing. As a result, Defendants have forced Plaintiffs to litigate this motion to enforce the settlement. Plaintiffs are therefore entitled to attorney's fees stemming from this additional litigation as compensatory damages.

Ohio law also entitles a prevailing party to receive prejudgment interest on a breach of contract action. "Once a plaintiff receives judgment on a contract claim, the trial court has no discretion but to award prejudgment interest under [Ohio Revised Code §] 1343.03(A)."[39] The trial court must determine how much interest is due by deciding "when interest commences to run, based on when the claim became due and payable, and as to what legal rate of interest applies."[40]

Plaintiffs contend that interest commenced to run on August 2, 2017, when the parties placed the settlement terms on the record. But, by the terms of the settlement, Defendants first

---

[37] *Rohrer Corp. v. Dane Elec Corp. USA*, 482 F. App'x 113, 117 (6th Cir. 2012) (citing *Raymond J. Schaefer, Inc. v. Pytlik,* No. OT–09–026, 2010 WL 3820552 (Ohio Ct. App. Sep. 30, 2010); *Tejada–Hercules v. State Auto. Ins. Co.,* No. 08AP150, 2008 WL 4416534 (Ohio Ct. App. Sep. 30, 2008); *Shanker v. Columbus Warehouse Ltd.*, No. 99AP–772, 2000 WL 726786 (Ohio Ct. App. June 6, 2000)).
[38] *See Wehr v. Petraglia*, 65 N.E.3d 242, 254-56 (Ohio Ct. App. 2016) (recognizing the potential for awarding attorney's fees as compensatory damages on a motion to enforce settlement); *McClusky v. Century Bank*, No. 2:12-cv-706, 2013 WL 12176597, at *7 (S.D. Ohio Sept. 27, 2013) (awarding attorney's fees as compensatory damages on a breach of settlement contract action).
[39] *Johncol, Inc. v. Cardinal Concession Servs., LLC*, No. 17AP-337, 2017 WL 6389166, at *7 (Ohio Ct. App. 2017). Separate and apart from this statutory mandate, the Court also finds that prejudgment interest is an appropriate equitable remedy for Defendants' breach. *See Chao v. American National Fleet Services, Inc.*, No. 1:08-cv-65, 2008 WL 2704410, at *3 (N.D. Ohio July 3, 2008) (awarding interest on a motion to enforce settlement resulting from a delayed payment).
[40] *Id.*

-7-

payment would only become due thirty days after the settlement was committed to writing and approved by the Court.[41]

As a result, the Court finds that, but for Defendants' attempts to insert the additional terms discussed above into the settlement, the Court could have approved the written settlement by October 17, 2017. By this date, the parties had apparently resolved all other issues relating to the settlement.[42]

The parties have continuously represented that the two terms that are the subjects of this order are the only things preventing them from filing a written settlement agreement. Without time spent negotiating those two terms, the parties should have been able to file their agreement and have the Court's approval by the time they reached the impasse that led to this litigation. Therefore, by the terms of the settlement contract, interest began to accrue on November 16, 2017, thirty days after the Court could have approved the settlement.

Ohio Revised Code §§ 1343.03 and 5703.47 control the applicable interest rate for a breach of contract action. Plaintiffs will therefore calculate interest based on the rate provided for in those statutes.

The Court **GRANTS** Plaintiffs' motion to enforce the settlement and **DENIES** Defendants' motion to approve the settlement. The parties will file a final settlement agreement within fourteen (14) days of the date of this order that comports with the terms placed on the record during the August 2, 2017 conference. This includes a mutual release of claims that accrued on or before August 2, 2017 and does not include Defendants' proposed claw back provision.

---

[41] *See* Doc. 261 at 4:15-16.
[42] Doc. 276 at 1.

Case No. 1:16-cv-1298
Gwin, J.

Further, the Court **GRANTS** Plaintiffs' request for attorney's fees and interest. Plaintiffs will produce for the Court's approval an accounting of their attorney's fees incurred as a result of litigating their motion to enforce the settlement within fourteen (14) days of the date of this order. Plaintiffs will also produce a calculation of interest consistent with this opinion within fourteen (14) days of the date of this order.

**B. Plaintiffs' Motion to Hold That the Settlement Terms Are No Longer Confidential and Defendants' Motion to File the Settlement Agreement under Seal**

1. *The Confidentiality Provision and Defendants' Potential Breach*

Plaintiffs argue that because Defendants discussed the settlement terms in open court, did not request that the Court seal the transcript of those discussions, ordered that unsealed transcript, and then attached that same transcript to their public appeal to the Sixth Circuit, the settlement terms are no longer confidential. Plaintiffs also contend that the settlement terms are no longer confidential because the Court must use the transcripts discussing those terms to adjudicate Plaintiffs' motion to enforce the settlement.

When the parties originally reached a settlement agreement, they agreed to a mutual confidentiality provision as part of that settlement.[43] That provision required both parties to keep the amount of the settlement confidential, excepting disclosure to spouses, tax preparers, or a few relevant legal entities.[44] In order to facilitate that confidentiality provision, the Court sealed the transcript of the settlement hearing and instructed the parties to file their proposed settlement agreement under seal.[45]

Defendants did not heed this instruction. To date, Defendants have caused the material terms of the settlement to be placed into the public record four separate times: first, during the

---

[43] Doc. 261 at 3:4-14.
[44] *Id.* at 3:4-15.
[45] *Id.* at 5:13-14.

Case No. 1:16-cv-1298
Gwin, J.

November 2017 settlement impasse hearing;[46] second, when Defendants failed to request that any private information be redacted from the transcript of that hearing by the date set forth in the relevant docket entry;[47] third, when Defendants ordered that un-redacted transcript;[48] and fourth, when Defendants filed that un-redacted transcript as the basis of their appeal to the Sixth Circuit.[49] Because of Defendants' actions, the cat, as the saying goes, is out of the bag.

Plaintiffs request that the Court rescind the confidentiality provision from the settlement contract (or to modify the contract to exclude that provision). The Court will not do this. However, as Plaintiffs correctly argue, the public has a right to access court records, and so the Court will not allow the parties to file their final settlement agreement under seal.

2. *Rescission or Modification of the Settlement Contract*

Under Ohio law, "a settlement agreement may be enforced either through filing an independent action for breach of contract or by filing a motion to enforce the settlement in the same action . . . ."[50] Plaintiffs argue that Defendants' revealing the settlement terms has breached the settlement contract. Accordingly, Plaintiffs wish to remove the confidentiality provision from the contract as a remedy for that breach.

Rescission of a single material term in a contract is not an available remedy for breach of contract in Ohio.[51] The Court therefore cannot grant them this remedy.

Similarly, although "[p]arties may implicitly modify an agreement by their actions," an implicit modification requires "[a] continued, different, course of performance between

---

[46] Doc. 266 at 5:22 – 6:9.
[47] *See* Docket Entry 266 ("Parties requesting that privacy information be redacted must file a notice of intent to redact with the court by 12/7/2017. Redaction Request due 12/21/2017.").
[48] *See* Doc. 267.
[49] *See* Doc. 269-1.
[50] *See Davis v. Jackson*, 823 N.E.2d 941, 943-44 (Ohio Ct. App. 2004).
[51] *See Fenix Enter., Inc. v. M & M Mortg. Corp., Inc.*, 624 F. Supp. 2d 834, 842 (S.D. Ohio 2009) ("When a contract is rescinded, it must be rescinded in total and the parties put in the position that they were before the contract was executed.").

-10-

parties."[52] A modification requires "a meeting of [the parties'] minds in agreement to modify" a contractual term.[53] That meeting of the minds is not present here. Defendants' isolated and seemingly accidental incidents of breaching confidentiality by including the settlement terms in the November 2017 hearing and their appeal of that hearing are not the type of "continued . . . course of performance" that constitutes a contract modification.[54]

Plaintiffs' numerous citations to this Court's prior opinions do not suggest a different conclusion.[55] Those opinions are about whether *the Court* will facilitate a party's wish to keep some information confidential by allowing a party to file that information under seal.[56] They do not address whether a party can rescind or modify a confidentiality provision as a remedy for the opposing party's previous breach of that provision.

For those reasons, the Court will not hold that the confidentiality provision within the settlement contract is no longer effective.

3. *Sealing the Settlement Agreement*

However, the Court will not further aid the parties' attempts to keep the terms of their settlement confidential. In order to uphold the public's right to access court records, the Court will not allow the parties to file their settlement agreement under seal.

---

[52] *St. Mary's v. Auglaize Cty. Bd. of Commrs.*, 875 N.E.2d 561, 568 (Ohio 2007) (internal quotation marks and citations omitted).
[53] Dvorske, et al., 18 Ohio Jur. 3d Contracts § 248 (Nov. 2017).
[54] *St. Mary's*, 875 N.E.2d at 568; *cf.* Dvorske, et al., 18 Ohio Jur. 3d Contracts § 248 (Nov. 2017) (noting by example that "a promise to pay money at a certain time is modified by the acceptance of notes of a third person payable at a later time" and "[a]cceptance by a lessor of a reduced rental constitutes a modification of the rental contract").
[55] *See* Doc. 274 at 2-3.
[56] *See, e.g.*, *Fitness Quest Inc. v. Wonderfulbuys.com*, No. 5:06-CV-2204, 2007 WL 1072026, at *1 (N.D. Ohio Apr. 5, 2007) (denying motion for protective order).

Case No. 1:16-cv-1298
Gwin, J.

There is a strong, constitutionally based presumption that the materials the courts rely on in reaching their decisions will be made available to the public.[57] Although private parties are free to negotiate confidentiality between themselves, the courts do not shield their decision-making from the public without some overriding public interest justification, such as protecting trade secrets.[58]

This right of access includes access to finalized settlement agreements.[59] Once a settlement agreement becomes the subject of litigation, the terms of that agreement become a matter of public record unless the Court finds that the public interest is better served by confidentiality.[60]

Here, in order to decide the parties' motions, the Court must rely on and evaluate the settlement terms placed into the record during the August and November 2017 hearings. The Court must also evaluate and approve the final settlement agreement in order to ensure that it conforms to the Court's orders. Defendants have not presented any argument that suggests that the Court's refusal to aid them in maintaining the settlement's confidentiality will prejudice them, much less that they will suffer the types of harm that allow a court to seal documents from the public.

---

[57] *Id.* (citing *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm.*, 710 F.2d 1165, 1177-79 (6th Cir. 1983)).

[58] *See Goesel v. Boley Intern. (H.K.) Ltd.*, 738 F.3d 831, 833-36 (7th Cir. 2013) (citing trade secrets and "compelling reasons of personal privacy" as two such public interest concerns that allow a court to seal documents).

[59] *See Oberthaler v. Ameristep Corp.*, No. 4:08-cv-1613, 2010 WL 1506908, at *1 (N.D. Ohio Apr. 13, 2010) ("Simply put, litigants may not shield otherwise discoverable information from disclosure to others merely by agreeing to maintain its confidentiality.").

[60] *See Zwerin v. 533 Short North LLC*, No. 2:10-cv-288, 2012 WL 5388762, at *3 (S.D. Ohio Nov. 2, 2012) (noting that a settlement agreement must become opened to the public once it becomes the subject of litigation and "influence[s] or underpin[s] the judicial decision").

Case No. 1:16-cv-1298
Gwin, J.

Additionally, Defendants' citations to case law are unavailing. Those cases dealt with protecting settlement *negotiations* from disclosure.[61] Defendants, however, are attempting to protect finalized settlement *terms*.[62]

Therefore, in order to protect the public's right to access court records, the Court **DENIES** both Plaintiffs' and Defendants' motions to file the final settlement agreement under seal. The Court also **DENIES** Plaintiffs' motion to hold the confidentiality provision no longer part of the settlement agreement.

**C. Plaintiffs' Motion for Sanctions**

Plaintiffs seek sanctions against Attorney Barry Freeman and his firm, Buckhingham, Doolittle & Burroughs, LLC, for their continued delay in finalizing the settlement.

There is some indication in the record that Attorney Freeman refused to finalize the settlement solely in order to strong arm Plaintiffs into agreeing to the two terms described above that the Court finds were not part of the original settlement agreement.[63]

Nevertheless, the Court finds that Freeman's position was not so wholly unreasonable or obviously taken in bad faith that it warrants sanctions.[64] This is especially so given that Freeman's (or perhaps his clients') unwillingness to finalize the settlement agreement has already caused his clients to incur Plaintiffs' attorney's fees.

The Court **DENIES** Plaintiffs' motion for sanctions.

---

[61] *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980-81 (noting that "[t]here exists a strong public interest in favor of secrecy . . . during settlement *negotiations*" and that the Sixth Circuit's previous cases recognized "the historical secrecy of settlement *talks*" (emphasis added)).
[62] *See Grupo Condumex, S.A. de C.V. v. SPX Corp.*, 331 F. Supp. 2d 623, 629 (N.D. Ohio 2004) (noting that while settlement negotiations are protected from disclosure, the existence of a settlement or a settlement's terms are not).
[63] *See* Doc. 273-2 at 2, 6 (exhibiting a willingness to issue the payment due to the Plaintiffs immediately if they agree to Defendants' interpretation of the release of claims and claw back provisions).
[64] *See, e.g.*, Fed. R. Civ. P. 11(b) (noting that sanctions may be warranted when a party presents a motion for an improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation").

## IV. CONCLUSION

For those reasons, the Court **GRANTS** Plaintiffs' motion to enforce the settlement.

The Court **DENIES** Defendants' motion to approve the settlement, **DENIES** both Plaintiffs' and Defendants' motions to file the settlement under seal, **DENIES** Plaintiffs' motion to hold that the settlement terms are no longer confidential, and **DENIES** Plaintiffs' motion for sanctions.

The Court **ORDERS** the parties to file a settlement agreement comporting with this decision within fourteen (14) days of the date of this order.

The Court also **ORDERS** Plaintiffs to file an accounting of their attorney's fees related to their motion to enforce the settlement and a calculation of prejudgment interest within fourteen (14) days of the date of this order.

IT IS SO ORDERED

Dated: March 2, 2018                              *s/         James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE